**Richard BEATTY, Appellant,**

v.

**Frank M. HALPIN, Former Director of Internal Revenue, Appellee.**

**No. 16113.**

United States Court of Appeals
Eighth Circuit.

June 19, 1959.

George P. Comfort, Des Moines, Iowa (Frank B. Comfort and Comfort and Comfort, Des Moines, Iowa, on the brief), for appellant.

S. Dee Hanson, Atty., Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum and Fred E. Youngman, Attys., Department of Justice, Washington, D. C., and Roy L. Stephenson, U. S. Atty., Des Moines, Iowa, and John C. Stevens, Asst. U. S. Atty., Muscatine, Iowa, on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and MATTHES, Circuit Judges.

GARDNER, Chief Judge.

During the years involved in this case appellant was the owner of a number of apartment houses in and around the city of Des Moines, Iowa. These properties were cared for by persons living in them who received in return for their services all or part of the rent of the apartments which they occupied. On the theory that these caretakers were employees of appellant, the then Director of Internal Revenue assessed against appellant Federal Unemployment Tax Act taxes for the period 1946 through 1955 and Federal Insurance Contributions Act taxes for the period October 1, 1949 through 1955. Appellant paid these taxes under protest, following which he made claim for refund. This claim was in due course rejected, whereupon this action was brought for their recovery.

In the course of this opinion we shall refer to appellant as plaintiff or as taxpayer. It was the contention of plaintiff that the persons caring for his apartment houses were independent contractors and not employees and, hence, he was not liable for the taxes assessed. He makes this same contention in this Court. The basic facts are not in dispute and we think are fairly reflected in the findings of the court. The court made very specific detailed findings which so far as here material are as follows:

"1. During the years in issue, the taxpayer, Richard Beatty, was the owner of a number of apartment houses in and around the city of Des Moines. The custodial or janitorial work in these buildings was performed by persons living in them and who received in return for their services all or part of the rent of the apartments which they occupy. The defendant assessed against the plaintiff FUTA taxes for the period 1946 through 1955, and FICA taxes for the period from October 1, 1949, through 1955, on the ground that these persons were employees of the taxpayer, Richard Beatty. These taxes aggregating about $6,700, were paid by the taxpayer, and he brought this action to obtain refund of the taxes. * * *

"3. The duties of the janitor or custodian of the apartment building were as follows:

"(a) To clean the halls and steps of the buildings.

"(b) To see that the heating, water heaters, and utilities were operating and in some instances to fire the furnace or keep the hopper of the stoker filled with coal.

"(c) To remove clinkers from the boilers.

"(d) To mow the lawns and take care of the hedges and maintain the yards and walks.

"(e) To clean the windows in the apartments, put up and take down storm windows and screens.

"(f) To remove garbage from the rear porches. The garbage and the coal ashes were taken from the premises by third persons.

"(g) To shovel snow from the sidewalks and to keep them clean.

"(h) To make small repairs to the plumbing, electricity or utilities, such as the changing of light bulbs or replacing of fuses. Major repairs were done by other persons who were employed by the taxpayer or by persons hired by the taxpayer.

"(i) To assign laundry times to the tenants.

"(j) To show vacant apartments, collect rent from some of the tenants and pay the rent promptly to the taxpayer.

"4. The janitor did not have the right to rent apartments or to evict tenants from apartments. He showed the apartments to prospective tenants but the taxpayer decided to whom to rent. The taxpayer also decided whom to evict. The janitor did not perform the task of eviction. The janitor or custodian did not have the duty of fixing the rents to be obtained from the apartments and

had no authority either to raise or lower the rents.

"5. The taxpayer had the right to supervise the work of the janitor and did in fact supervise the work by means of personal visits or by telephone.

"6. There was no written contract between the taxpayer and the janitor and there was no fixed period of time for the continuance of the relationship. The taxpayer had the right to discharge the janitor at any time and the latter had the right to leave at any time.

"7. The duties required only part of the working time of the janitor or custodian, and he usually had another job or he was a student attending classes.

"8. Certain of the duties required that the janitor perform them at specified times, such as the firing of the furnace. As to other duties, the janitor had some leeway, such as in the time for performance of cleaning.

"9. The janitor had the right to get someone to substitute for him in his absence. The janitor normally did not stay away for protracted periods and the taxpayer did not object to the substitute so long as the work was done well. In practice, the janitor would get a friend to substitute for him and would not pay for the hiring of a substitute.

"10. The janitor was paid for his services by the taxpayer by being given rent-free the apartment occupied by the janitor in the taxpayer's building.

"11. The taxpayer supplied all of the equipment used by the janitor or custodian in his duties. Such equipment consisted of shovels for the coal or the snow, equipment for cleaning the halls (such as vacuum cleaners, mops and brooms), lawn mowers and clippers for caring for the lawns and hedges; ladders and cleaning equipment for taking care of the windows and changing the screens and storm windows. The taxpayer also furnished the soap and cleaning and polishing materials needed for the janitor's work.

"12. The janitor's work was all done on the premises belonging to the taxpayer.

"13. The janitor did not take care of the disposing of the garbage or ashes from the building. The taxpayer arranged for the disposal of the garbage and ashes either by contract or by use of other employees. * * *

"16. The janitor or custodian did not have an office or hold himself out generally as being in the business of performing janitorial or custodial work. The janitor or custodian did not advertise his services in the newspaper or elsewhere. The janitor or custodian did not consider that he was in the business of supplying janitorial or custodial service to persons generally. The work was regarded by the janitor or custodian as part-time work and was done solely as a means of earning the rent for the apartment which he occupied."

On these findings the court concluded that the persons taking care of the taxpayer's apartment houses were employees and not independent contractors and, hence, taxpayer was liable for the taxes here involved. The court accordingly entered judgment dismissing plaintiff's complaint.

 On this appeal plaintiff contends that the court erred in finding that those caring for his apartment houses were employees and in not finding that they were independent contractors, and that, we believe, is the sole issue in the case.

The statutes authorizing the assessment of the taxes here involved require the employer to deduct and withhold from his employees certain so-called social security taxes, unemployment taxes, and withholding taxes. Sec. 3101 et seq.,

Sec. 3301 et seq., Sec. 3402 et seq., Internal Revenue Code of 1954, 26 U.S.C.A. §§ 3101 et seq., 3301 et seq., 3402 et seq. Authority for the assessment of these taxes, however, is dependent upon the existence of the relation of employer and employee, and, stated in the concrete, if the trial court was correct in finding that the taxpayer in the instant case was the employer of the persons caring for his apartment houses, then the judgment appealed from should be affirmed

As the taxpayer is seeking to recover taxes already collected, the burden of proof was upon him to establish that the relation of employer-employee did not exist. There was, of course, a presumption of validity in favor of the action of the Director of Internal Revenue. As had already been observed, the taxpayer's affirmative contention was that these persons, within the meaning of the tax statutes here under consideration, were independent contractors. The statutes do not purport to define either the term, "employee", or the term, "independent contractor". The term, "independent contractor" has been variously defined, but the phraseologies used all convey the general idea that he is one who, in rendering services, exercises an independent employment or occupation and represents the will of his employer only as to the results of his work, and not as to the means whereby it is accomplished. One who engages to perform a certain service for another, according to his own manner and method, free from the control and direction of his employer in all matters connected with the performance of the service, except as to the result of the work is an independent contractor. Various tests have been applied in determining whether one is a servant or an independent contractor. The relation cannot be determined by a hard and fast rule but is dependent upon many facts. Among such facts which may be considered are whether the contractor is carrying on an independent business, whether the work is part of the employer's general business, the nature and extent of the work, the skill required, the term and duration of the relationship, the right to assign the performance of the work to another, the power to terminate the relationship, the existence of a contract for the performance of a specified piece of work, the control and supervision of the work, the employer's powers and duties with respect to the hiring, firing, and payment of the contractor's servants, the control of the premises, the duty to supply the premises, tools, appliances, material and labor, and the mode, manner, and terms of payment. Hassebroch v. Weaver Construction Co., 246 Iowa 622, 67 N.W.2d 549; Mallinger v. Webster City Oil Co., 211 Iowa 847, 234 N.W. 254. In holding that the relation of employer-employee existed rather than that of employer and independent contractor, the Supreme Court of Iowa, in Mallinger v. Webster City Oil Co., supra, among other things, said:

"The term (independent contractor) has a fairly well-defined meaning under the decisions of many jurisdictions, including our own. An independent contractor under the quite universal rule may be defined as one who carries on an independent business and contracts to do a piece of work according to his own methods, subject to the employer's control only as to results. The commonly recognized tests of such a relationship are, although not necessarily concurrent or each in itself controlling: (1) The existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of his business or of his distinct calling; (3) his employment of assistants with the right to supervise their activities; (4) his obligation to furnish necessary tools, supplies, and materials; (5) his right to control the progress of the work, except as to final results; (6) the time for which the workman is employed; (7) the method of payment, whether by time or by job; (8) whether the work is part of the regular business of the em-

ployer. If the workman is using the tools or equipment of the employer, it is understood and generally held that the one using them, especially if of substantial value, is a servant." [211 Iowa 847, 234 N.W. 256.]

We are of the view that the undisputed facts in this case embodied in the court's findings compel the conclusion that the relation between taxpayer and the persons caring for his apartment houses was that of employer and employee and not that of employer and independent contractor. This was the finding and conclusion of the trial court, whose findings are presumptively correct, and in the instant case are sustained by the undisputed evidence.

The judgment appealed from is therefore affirmed.