ETHAN G. AND ARLENE STEIN HARRIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Harris v. Commissioner
Docket No. 860-76.
United States Tax Court
T.C. Memo 1977-358; 1977 Tax Ct. Memo LEXIS 82; 36 T.C.M. (CCH) 1426; T.C.M. (RIA) 770358; October 6, 1977, Filed Vincent L. Alsfeld, for the petitioners. Thomas P. Dougherty, Jr., for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and General Order No. 5 of this Court. [2] The Court agrees with and adopts Special Trial Judge Falk's report which is set forth below. *85 OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined a deficiency of $1,466.29 in petitioners' 1972 federal income tax and an addition to tax of $73.31 in respect thereof under section 6653(a). The issues presented are: (1) Whether petitioners understated their gross income and, if so, to what extent; (2) whether petitioners are entitled to deduct, under section 162(a), certain expenses incurred by petitioner Arlene Stein Harris in connection with her work as an educational coordinator of a child study project; (3) whether petitioner Arlene Stein Harris received self-employment income subject to tax under section 1401; and (4) whether a part of the underpayment of tax, if any, was due either to petitioners' negligence or intentional disregard of internal revenue rules and regulations within the meaning of section 6653(a). To reflect the increase in adjusted gross income, respondent disallowed a portion of the medical expense deduction claimed under section 213 by petitioners. This presents solely a question of computation, and is contingent upon our disposition of the first two issues. FINDINGS OF FACT Some of the facts have been stipulated, *86 and those facts are so found. Petitioners filed their joint 1972 federal income tax return with the Internal Revenue Service Center at Andover, Massachusetts. At the time the petition herein was filed, they resided in Weston, Massachusetts. Petitioner Arlene Stein Harris [3] received a degree in English and education from Washington University in St. Louis, Missouri, in 1966. She taught English and social studies at a junior high school in Chicago for two years. Petitioner moved to Boston, Massachusetts, in 1968. In late September, 1968, after not being able to locate a teaching position, petitioner commenced a job and training program at Boston Children's Hospital in play thereapy. She resumed her teaching career one year later at Wellesly (Massachusetts) High School, where she taught English. Petitioner's interest in mental health motivated her to leave Wellesly and secure a position working with emotionally disturbed children at McLean Hospital. During this time, she worked intermittently with delinquent adolescents at Lowell, Massachusetts. *87 After leaving McLean, petitioner began work for the Massachusetts Department of Mental Health (hereinafter referred to as the Department). The Department, in conjunction with the Office of Special Education (hereinafter referred to as the Office), undertook a child study project to identify school children with emotional disturbances so as to provide a rational basis for the planning and allocation of mental health resources to school systems. During part of 1971, petitioner worked on this project and was paid by checks issued by the Department. She was required to submit vouchers as a condition of payment. From January 1 until May 1, 1972, petitioner worked part time helping to write an application for federal grant monies to fund this project. She received no remuneration for those efforts. She believed that she would have a job if the child study project was funded. Her efforts proved fruitful and, from May 1 through November 30, 1972, petitioner acted as a therapist for the Ernest L. Herrman School (hereinafter referred to as the School), for which she was paid. The School is a nonprofit, educational institution and it served as project director for the study. In her *88 capacity as a thereapist, petitioner participated in the project as the educational coordinator. She was paid by checks issued by either the Department or the Office. Petitioner received a salary, and she was not required to submit vouchers as a condition of payment. Respondent determined that petitioner's income during this period was $5,000, and not $3,030, as reported on her return. As educational coordinator, petitioner interviewed hundreds of children with special needs to provide data to the Department and the Office. She also interviewed teachers and parents to determine the types of special education needed by different children. Petitioner performed her duties independently and was not supervised daily.The project was, however, screened by the Department and the Office, and petitioner had periodic meetings with their personnel. Dr. Ernest L. Herrman, director of the School, occasionally supervised petitioner's activities. It was his duty to make sure that the project work was being completed. Petitioner made periodic reports to the Department and the Office through Dr. Herrman. She considered the Department and the Office to be her employer. Petitioner was not *89 furnished a place to work at the School, the Department, or the Office. She was required to keep records of the project's findings and summarize the research. Frequently, petitioner had meetings at her home for this purpose. She maintained an office in her home (one-sixth of the entire space of her apartment). The office was furnished with a table, chairs, and bookshelves. File cabinets and a typewriter were added later. The file cabinets were paid for from the project's funds. The office in petitioner's home was used for activities other than her work 10 percent of the time. Petitioner's rent was $175 a month. Her utilities expenses were approximately $31 a month and her apartment insurance premium was $55 a year. She claims a $610 deduction for home-office expenses. Petitioner's job required her to do extensive traveling. The interviewing process took place in three diverse areas in Massachusetts: Greenfield, a rural region in the western part of the state; Malden, a suburban region in the eastern part of the state; and Worcester, an urban region in the central part of the state. Petitioner visited schools in these locations two to four times each week. She was furnished *90 no transportation and, consequently, used her own car. Petitioner kept no records of her automobile expenses nor of the actual distance she drove her car for business purposes. She claims a $1,200 deduction for transportation expenses. Petitioner incurred expenses for professional books, telephone calls, organizational dues, video and cassette tapes, a tape recorder, parking, tolls, office supplies, a stopwatch, and entertainment. She did not declare any of these expenses as deductions on her return. Instead, she offset the claimed expenses directly against her grant income and reported the net figure as "other income" on the return. She did not maintain records of those expenses, other than check stubs and her telephone bill. Respondent determined that the alleged expenses are not deductible by reason of lack of substantiation. Respondent also determined that petitioner understated her gross income by another $1,110, representing miscellaneous income. Petitioner was mailed a 1972 Form 1099 by the Commonwealth of Massachusetts, postmarked February, 1973, reflecting such income. The form was undeliverable because petitioner left no forwarding address when she moved. Petitioner *91 first became aware of this form at audit. Finally, respondent determined that another $798.96 should have been reported in gross income by petitioner and her husband. Petitioner concedes this amount was understated. It represents a mathematical error in transposing the wages from the Form W-2 to the Form 1040. Respondent seeks to impose the tax on self-employment income pursuant to section 1401 on the $5,000 grant income and the $1,110 miscellaneous income received by petitioner, on the theory that petitioner was an independent contractor while she worked on the child study project. An addition to tax of $73.31 is also asserted by respondent under section 6653(a). Respondent contends that the substantial understatement of income, coupled with the failure to pay self-employment tax, constitutes negligence or intentional disregard of rules and regulations. OPINION The issues involved herein are fundamentally factual. 1. Understatement of gross income
Petitioner concedes that she received $5,000 of income from the study project in which she was engaged in 1972, but maintains that the expenses relating to her trade or business, referred to in the findings of fact, *92 can be offset or deducted. Respondent argues that petitioner understated her gross income by reporting the grant income net of expenses and, further, contends that they are not deductible because petitioner has offered no records substantiating the alleged expenditures. Petitioner, in effect, has taken deductions of $1,970 under section 162(a) and has deducted them under section 62 in computing adjusted gross income, without reporting either her gross income or those expenses on her return. This she cannot do. A taxpayer must report all income for the taxable year in full. See sec. 61(a). Then, any deductions authorized by Congress may be deducted. See Rietzke v. Commissioner,40 T.C. 443, 453 (1963); Warwick v. United States,236 F. Supp. 761, 767 (E.D. Va. 1964). We hold that petitioner must include the full $5,000 of grant income in her joint 1972 federal income tax return. We decide, infra, whether petitioner is entitled to deductions for expenses incurred in the carrying on of any trade or business, and if so, whether those expenses are deductible from gross income in computing adjusted gross income or from adjusted gross income to *93 determine her taxable income. Respondent determined that petitioner understated gross income by an additional $1,110, representing income received from the Commonwealth of Massachusetts. Petitioner contends that this was income received in 1971, but failed to offer into evidence her 1971 federal income tax return. Mr. Edwin Baldwin, Chief Supervisor of Accounting Training in the Massachusetts State Controller Division, which maintains the payroll records for the State, testified that two checks, totaling $1,110, were sent to petitioner in 1972. Respondent's determination is presumptively correct and the burden of proof is on petitioner to show error, Schultz v. Commissioner,59 T.C. 559, 566 (1973), which she has failed to do. It is difficult to conceive of a 1972 Form 1099, postmarked February 1973, that pertains to income reported on petitioner's return for 1971, and petitioner's testimony has not overcome this difficulty. We hold that the $1,110 of miscellaneous income is also includable in petitioner's 1972 joint federal income tax return. 2. Business expense deductions
Petitioner claims a variety of business expense deductions under section *94 162(a). These deductions were not declared on her 1972 joint federal income tax return, but were used by her to offset her gross income. Neither were they included in the notice of deficiency, but they are properly before us. See Rule 41(b)(1), Tax Court Rules of Practice and Procedure.
Petitioner claims a deduction in the amount of $610 for home-office expenses. The costs of maintaining a home are generally nondeductible personal expenses. See sec. 262. Section 1.262-1(b)(3), Income Tax Regs., allows a deduction for a part of the cost of maintaining a home if the taxpayer uses the home as his or her place of business. Respondent argues that petitioner has not shown that she used the office in her home for anything other than her personal convenience. Sharon v. Commissioner,66 T.C. 515 (1976), on appeal (9th Cir., Dec. 20, 1976); Meehan v. Commissioner,66 T.C. 794 (1976). We disagree. Petitioner was not furnished a place to work at the School, the Department, or the Office. She was required to correlate and summarize the research gathered from the study.No suitable facility was available to her for this purpose. Because she used the *95 office in her home more than incidentally, and needed to maintain some place to work due to the exigencies of her employment, we find that she is entitled to a deduction under section 162(a). She may not, however, deduct the $610 in full. Petitioner introduced into evidence check stubs [4] supporting payments of $175 a month for rent, approximately $31 a month for utilities, and $55 for an annual apartment insurance premium. Petitioner may deduct only $221.12, which amount represents an allocation of one-sixth of the abovementioned expenses of the apartment used 90 percent of the time from May 1 through November 30, 1972. No evidence was introduced as to the amounts of depreciation on the office equipment and the library and, therefore, they cannot be allowed. Petitioner has also claimed deductions of $1,200 and $240 for transportation and parking and tolls, respectively. Costs of commuting to a taxpayer's place of business are nondeductible personal expenses. See Commissioner v. Flowers,326 U.S. 465 (1946); sec. 1.262-1(b)(5), Income Tax Regs.Here, however, *96 petitioner had a place of business at her residence. A taxpayer may deduct transportation expenses incurred when traveling from work at home to another place of work if the taxpayer's home was his or her principal place of business. Green v. Commissioner,59 T.C. 456 (1972). On these facts, we find that petitioner is entitled to a $500 deduction under section 162(a) for transportation, parking, and tolls. Petitioner provided no documentary substantiation in aid of her oral testimony, and we find this to be reasonable under the circumstances. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Petitioner sought to establish expenses for professional books, telephone calls, organizational dues, video and cassette tapes, and a tape recorder.The record fails to disclose the amount of each expense. She did, however, introduce into evidence some check stubs to support expenditures of $141.44 for books, $12 for dues to the Massachusetts Teachers Association and the Association of the Mentally Ill, and $174 for video and cassette tapes and a tape recorder. Petitioner could not specifically recall what books she purchased, but testified that she did no *97 personal reading. She also introduced into evidence telephone bills for 1972 with her alleged business calls underlined in red pencil. She claims a $180 deduction for telephone expenses. In addition, petitioner claims expenses of $240 for parking and tolls, $120 for office supplies, and $40 or $50 for a stopwatch. Petitioner's evidence in respect of these items is deficient in many respects, yet we believe she did incur some such expenses. Applying the rule in Cohan,supra, we find that petitioner is entitled to deduct $70 for books, $16.33 for business telephone calls, $12 for organizational dues, and $50 for tapes. Petitioner is also entitled to deductions of $60 and $40 for office supplies and a stopwatch, respectively. She may not deduct any amounts for entertainment expenses, because she has not satisfied the stringent substantiation requirements of section 274(d). Section 162(a) authorizes deductions for expenses incurred in carrying on any trade or business. Section 62 specifies which of those expenses may be deducted from gross income to compute adjusted gross income. An employee may only deduct certain enumerated expenses from gross income *98 in computing adjusted gross income. See sec. 62(2). An employer or self-employed individual does not have such restrictions. See sec. 62(1). Petitioner has introduced no evidence indicating that she was not an employee. To the contrary, she maintains that she is an employee of the Department or the Office for purposes of the self-employment tax. We hold that petitioner may deduct the transportation expenses from gross income in computing adjusted gross income. See sec. 62(2)(C). The remaining expenses are deductions from adjusted gross income in computing taxable income. 3. Tax on self-employment income
Section 1401 imposes a tax on the self-employment income of every individual. The tax represents contributions by a self-employed individual to the Social Security fund. Subject to exceptions not applicable here, the tax does not apply to employees. See sec. 1402(c)(2). [5] Section 1402(d) defines "employee" by reference to section 3121 (the Federal Insurance Contributions Act) in Chapter 21 of the Code. "Employee" is defined there as the usual common law principles for determining the employer-employee relationship. The burden of proof is on petitioner to show *99 she is an employee. United States v. Rexach,331 F. Supp. 524 (D. P.R. 1971), vacated and remanded on another issue 482 F.2d 10 (1st Cir. 1973), cert. denied 414 U.S. 1039 (1973); Rule 142(a), Tax Court Rules of Practice and Procedure. Respondent contends that petitioner was an independent contractor while working on the study project and is, therefore, subject to the self-employment tax. He relies on Rev. Rul. 57-127, 1957-1 C.B. 275, which held an individual, receiving amounts under a federal research grant and whose performance was not subject to supervision or control by the funded institution, to be self-employed. Petitioner argues that she was an employee of the Department or the Office in 1972. Whether an individual is an employee or independent contractor is a question of fact. Some of the factors to consider in determining the individual's status are the degree of control over the individual, the individual's investment in facilities, the permanency of the relationship between the parties, and the individual *100 skill required. Enochs v. Williams Packing Co.,370 U.S. 1 (1962); Bartels v. Birmingham,332 U.S. 126 (1947). The presence or absence of any one factor is not determinative, however the degree of control is the single most crucial element. Ralls, Inc. v. United States,470 F.2d 579 (Ct. Cl. 1972). The degree of control means the right to direct the individual, not only as to the result to be accomplished, but also as to the manner and means by which that result is accomplished. Deecy Products Co. v. Welch,124 F.2d 592 (1st Cir. 1941); sec. 31.3121(d)-1(c)(2), Employ. Tax Regs. Control need not actually be enforced. It is merely the right to exercise control as to the result and the method that is necessary. United States v. Thorson,282 F.2d 157 (1st Cir. 1960); Deecy,supra; McGuire v. United States,349 F.2d 644 (9th Cir. 1965); Ralls,supra; McCormick v. United States,531 F.2d 554 (Ct. Cl. 1976). Petitioner was not supervised on a daily basis. However, the child study project was screened by the Department *101 and the Office. Dr. Herrman was responsible for making sure the work progressed satisfactorily, and petitioner had to submit periodic reports to him on the status of the program.There was a sufficient presence of control over petitioner by Dr. Herrman, the Department, and the Office to classify her as an employee. It is irrelevant that no control was actually exercised. Rev. Rul. 57-127 is factually distinguishable because there the funded institution had no supervision, direction, or control over the taxpayer. In close cases, the intent and belief of the interested parties is a factor to be considered. Illinois Tri-Seal Products, Inc. v. United States,353 F.2d 216 (Ct. Cl. 1965); Lifetime Siding, Inc. v. United States,359 F.2d 657 (2d Cir. 1966), cert. denied 385 U.S. 921 (1966). Petitioner at all times considered herself to be an employee of the Department or the Office. The fact that she received a salary in 1972 and no longer had to submit vouchers as a condition of payment indicates that the State also considered her an employee. We hold that petitioner was an employee during 1972 and is not subject to the tax *102 on self-employment income on her $5,000 salary. [6] On the other hand, there is no evidence that the $1,110 reflected on Form 1099 was not self-employment income.Accordingly, we hold that petitioner is subject to self-employment tax on $1,110. 4. Addition to tax under section 6653(a)
Respondent determined an addition to tax under section 6653(a) for 1972. This section provides that "if any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment." Respondent maintains that the penalty is applicable here because petitioner understated gross income and failed to pay the self-employment tax. With regard to the self-employment tax, there was clearly a bona fide dispute presenting substantial issues of law and fact. Scott v. Commissioner,61 T.C. 654 (1974); *103 Kasey v. Commissioner,54 T.C. 1642 (1970), affd. 457 F.2d 369 (9th Cir. 1972) (per curiam), cert. denied 409 U.S. 869 (1972). This, in itself, prevents imposition of the penalty. We are convinced, further, that petitioner's understatement of gross income was the result of honest mistakes and misunderstanding of the tax law.See Moorman v. Commissioner,26 T.C. 666 (1956); Heffelfinger v. Commissioner,32 B.T.A. 1232 (1935), affd. on another issue 87 F.2d 991 (8th Cir. 1937), cert. denied 302 U.S. 690 (1937). We hold that respondent erred in asserting a penalty under section 6653(a). * * *
In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to General Order No. 5, the post-trial procedures set forth in Rule 182 of this Court's Rules of Practice and Procedure are not applicable to this case.↩
3. Inasmuch as Ethan G. Harris is a party to this proceeding solely because he filed a joint return with his wife, for convenience we will refer to Arlene Stein Harris as the petitioner.↩
4. Petitioner discarded the canceled checks when she and her husband moved from their apartment.↩
5. Section 1402(c)(2)(E) is inapplicable because petitioner was not compensated solely on a fee basis.↩
6. We note that there are many cases dealing with the scholarship and fellowship exclusion under section 117 that hold an individual, receiving grant monies, to be an employee of the funded institution. Cf. United States v. Silk,331 U.S. 704, 718, 719↩ (1947).