446 F.Supp. 698 (1978)
CHASE MANUFACTURING, INC., Plaintiff,
v.
UNITED STATES of America, Defendant.
No. 76-845C(3).
United States District Court, E. D. Missouri, E. D.
March 13, 1978.
*699 Glenn A. Altman, Walker & Williams, Belleville, Ill., for plaintiff.
Max H. Lauten, Trial Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., Robert D. Kingsland, U. S. Atty., U. S. Dept. of Justice, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, District Judge.
Plaintiff Chase Manufacturing Company brought this suit, pursuant to 28 U.S.C. § 1346, seeking a refund of federal employment and withholding taxes. Plaintiff seeks to recover $30,404.12 which it has paid, and defendant United States of America has counterclaimed for $24,937.86, the balance which it claims is due.
The matter was presented to the Court sitting without a jury. The parties submitted this cause to the Court on the basis of stipulations, depositions, exhibits, and briefs. After careful consideration of the same, the Court hereby makes the following findings of fact and conclusions of law in accordance with Rule 52, Federal Rules of Civil Procedure:

FINDINGS OF FACT
1) From January 1, 1970 to September 30, 1974, the period involved herein, plaintiff operated a home improvement business in the St. Louis area, engaged primarily in the sale and installation of aluminum siding. Plaintiff, through its salesmen, solicited and obtained contracts for the sale and installation of aluminum siding; applicators were then engaged to install the siding.
2) Mr. Melvin Shinall was one of the incorporators, and president of plaintiff until his death in December, 1972. At that time, Shinall's wife took over the presidency of the company.
3) Plaintiff's contact with applicators was the result of advertisements in the "Help Wanted" section of the newspaper, by word of mouth or referrals from plaintiff's suppliers. Mr. Shinall kept a book with the names and telephone numbers of applicators; beside each name, he indicated the quality of workmanship of the applicator.
4) Plaintiff did not train applicators or give them instructions as to the manner of installation. When an applicator was hired for the first time, Shinall, or a salesman, would stop by to check the progress of the job. Once Shinall was familiar with the applicator's work, the visits were less frequent. Plaintiff did not inspect or approve the jobs prior to completion by the applicator.
5) Applicators supplied their own tools, equipment and trucks to haul tools, equipment and materials to a job site. Applicators were paid by the job, based upon the amount of materials used. If the work was faulty and corrections were required, the applicator who had done the installation would correct the work without additional compensation. If that applicator was unavailable, however, another applicator was sent and he was compensated by plaintiff. Bonuses were paid to several applicators at Christmas time, and occasionally bonuses were paid to an applicator for a special job.
*700 6) Applicators determined their own hours, and when they would start and finish a job. They were expected, however, to start a job soon after accepting it. Applicators did not refuse jobs; if such refusals were numerous, however, plaintiff probably would not offer them regular work. Of the two applicators whose depositions were introduced herein, neither advertised their services to the general public. One worked exclusively for the plaintiff. The other did occasional small jobs on his own, usually on weekends, but the majority of his income was from work for the plaintiff. Applicators determined their own vacation schedule.
7) Plaintiff requested that applicators place signs at the job site advertising plaintiff. If the customer had no objection, the applicators did so.
8) Plaintiff did not remove applicators from a job prior to its completion. Applicators could quit a job before completion and were paid for the work done.
9) The record failed to indicate whether plaintiff had the right to discharge an applicator for objectionable workmanship or conduct during the job.
10) Once an applicator accepted a job, he ordinarily contacted plaintiff's office only if there was a question about what was covered under the customer's contract, or if a building permit was needed. Plaintiff's office was responsible for obtaining all necessary building permits.
11) If an applicator needed assistance, plaintiff arranged for the same. The record reveals no instance where an applicator arranged for, and paid, assistants on his own. On at least one occasion, Kenneth Zike, an applicator, was provided with the assistance of another applicator at a time when Mr. Zike was unaware of the necessity for the same. Mr. Zike hypothesized that perhaps plaintiff did not have enough business at that time to keep both applicators occupied.
12) Once an applicator accepted a job, he did not have the right to give it to another applicator without first obtaining plaintiff's permission. Applicators were supposed to contact plaintiff if the homeowner requested extra work. Plaintiff, however, was of the opinion that applicators did do extra work for homeowners, charging the homeowners for the same, without contacting plaintiff. Applicators were to refer leads for new contracts to plaintiff and were paid a commission if the lead resulted in a job. Some applicators, however, did not refer leads to plaintiff.
13) Kenneth Zike, an applicator, worked exclusively for plaintiff from late 1969 or early 1970 through 1974 when plaintiff ceased doing business. Ben Dickens, an applicator, worked for plaintiff from 1970 through 1973. These regular applicators, upon completing a job, would call plaintiff from the warehouse where plaintiff purchased its siding, and would request another job. At that point, plaintiff would instruct the applicators on the next job, giving them an address and the amount of siding necessary.
14) Applicators were paid on Fridays for the jobs completed that week. Occasionally, applicators would draw against a job which was not yet completed. Applicators were supposed to obtain a signed completion slip from the customer and were also requested to obtain payment. The applicators, however, were not expected to wait for payment or a completion slip if the customer was not home when the job was completed.
15) Plaintiff carried workmen's compensation insurance for its applicators. Redmon Williams, an applicator, made a claim and collected under the policy for a back injury. Kenneth Zike, an applicator, received from plaintiff itself the equivalent of a week's pay for a back injury incurred on the job. Plaintiff contends that it paid Zike itself because it was having difficulty with its workmen's compensation carrier. Plaintiff also carried general liability insurance; if the applicators did not have their own liability insurance, a percentage of their pay was deducted for coverage.
16) Upon audit of plaintiff's employment tax returns for each quarter from January *701 1, 1970 to September 30, 1974, the Commissioner of Internal Revenue determined a deficiency of $55,341.98, including assessed interest and penalties. This amount, however, does not include assessed interest and penalties since the date of assessment. Plaintiff paid $30,404.12, constituting full payment for all quarters in 1970 and 1971, and the last three quarters of 1972. Plaintiff filed timely claims for refund which were disallowed by the Internal Revenue Service. This suit was timely filed.

CONCLUSIONS OF LAW
This Court has jurisdiction of the subject matter and the parties to the suit in accordance with 28 U.S.C. § 1346.
The sole issue presented herein is whether, for purposes of federal withholding taxes, insurance contribution taxes, and unemployment taxes, the aluminum siding applicators were plaintiff's employees or were independent contractors. The burden of establishing the applicators' status as independent contractors is, of course, upon plaintiff. Beatty v. Halpin, 267 F.2d 561 (8th Cir. 1959). In order to make the determination, the Court is to apply the common law test for employer-employee status. Enochs v. Williams & Company, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962); 26 U.S.C. §§ 3121, 3306, and 3401; 26 C.F.R. §§ 31.3121(d), 31.3306(i), 31.3401(c). The factors to be considered are:
1) If the person receiving the benefit of a service has the right to control the manner in which the service is performed, the person rendering the service may be an employee.
2) If a person rendering a service has a substantial investment in his own tools or equipment, he may be an independent contractor.
3) If a person performing a service undertakes a substantial cost, say by employing and paying his own laborers, he may be an independent contractor.
4) If a person performing a service has an opportunity to profit depending on his management skill, he may be an independent contractor.
5) If a service rendered requires a special skill, the person rendering it may be an independent contractor.
6) If the relationship between a person rendering a service and the person receiving it is permanent, it may be an employment relationship.
7) If a person rendering a service works in the course of the recipient's business, rather than in some ancillary capacity, he may be an employee. Avis Rent A Car System, Inc. v. United States, 503 F.2d 423, 429 (2d Cir. 1974).
See also Illinois Tri-Seal Products, Inc. v. United States, 353 F.2d 216, 173 Ct.Cl. 499 (1965) (listing additional factors of the method of payment either by time or by job, and the relationship which the parties believe they are creating); Beatty v. Halpin, supra.
While all factors are to be considered, the major factor is whether the principal had "the right to control the manner and method of performing the work, as well as the result to be accomplished". Rayhill v. United States, 364 F.2d 347, 352 (Ct.Cl.1966). See also Ralls, Inc. v. United States, 470 F.2d 579, 200 Ct.Cl. 240 (1972); William C. McCombs Company, Inc. v. United States, 436 F.2d 979, 193 Ct.Cl. 644 (1971); Jagolinzer v. United States, 150 F.Supp. 489 (D.R.I. 1957).
It is the Court's conclusion that the evidence herein supports the determination that these applicators are in fact employees. The applicators worked, for the most part, exclusively for plaintiff. The only instance of an applicator earning income from another source involved small jobs on weekends. It is clear that these applicators' profits were not dependent upon their own managerial skills but upon the number of jobs performed for plaintiff. There is no evidence that applicators worked for competitors. They did not advertise their services and apparently, during the period in question herein, made no effort to obtain other employment.
While plaintiff may not have exercised extensive control over the manner of performing *702 the work, plaintiff did retain sufficient control to warrant the conclusion that the applicators were employees. Until plaintiff was assured of an applicator's skill, plaintiff's president, or one of the salesmen, stopped by the job to check the situation. Even after plaintiff was confident as to quality, spot checking still occurred. Plaintiff had definite rules concerning extra work and new contracts, both of which were to be referred to plaintiff. Although plaintiff claimed that some applicators did do extra work for homeowners without contacting plaintiff, no strong evidence was adduced on this point and in all likelihood, plaintiff is simply surmising this evidence without any proof of the same. The applicators did not provide for their own helpers; if helpers were required, the applicator requested and received the same from plaintiff. In fact, in one instance, the applicator received a helper without even making a request. Thus, it would seem that plaintiff determined the manner in which the job was to be performed.
While plaintiff did apparently engage a large number of applicators, there seemed to be a number of regulars whose relationship with plaintiff was of long duration. Plaintiff gave bonuses at Christmas time to a number of these regulars. Additionally, the service performed by the applicators was clearly in the course of plaintiff's business of selling and installing aluminum siding.
In those cases in which aluminum siding applicators were found to be independent contractors, factors existed which were not present herein. The applicators hired their own helpers and determined the helpers' pay. Additionally, applicators worked for competitors. Illinois Tri-Seal Products, Inc., supra; Powers v. United States, 424 F.2d 593, 191 Ct.Cl. 762 (1970); Ralls, Inc. v. United States, 470 F.2d 579, 200 Ct.Cl. 240 (1972); Tristate Developers, Inc. v. United States, 549 F.2d 190 (Ct.Cl.1977). It is the Court's conclusion that the facts herein are closer to those presented in Ben v. United States, 139 F.Supp. 883 (N.D.N.Y.1956), and Security Roofing & Construction Co. v. United States, 163 F.Supp. 794 (D.Mass. 1958). Admittedly, the facts adduced herein make resolution of the issue difficult; certain aspects of the operation point toward a conclusion of independent contractor status while other aspects support the conclusion that the applicators were employees. The burden, however, is upon plaintiff to establish that the applicators were independent contractors. Beatty v. Halpin, supra. Plaintiff failed to meet this burden.
The Court was supplied only with the testimony of two applicators, both of whom worked almost exclusively for plaintiff. The other depositions introduced herein were of little value in deciding the issue presented. There was no evidence adduced on the exact number of applicators used by plaintiff, nor evidence as to the frequency that said applicators were employed by plaintiff. While plaintiff was of the opinion that applicators did outside work for homeowners, plaintiff presented no evidence of the same and the only evidence on this point indicated that applicators did not do outside work without first consulting plaintiff. The evidence failed to establish whether or not plaintiff had the right to discharge an applicator during the course of a job. Plaintiff, not the applicators, arranged for any assistants needed by the applicators, and, in fact, provided additional help even when none was requested. Under these circumstances, the Court concludes that plaintiff has failed to establish that the applicators were in fact independent contractors. Accordingly, judgment will be entered for defendant.