JEAN S. HARRELL *v.* REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION, WILLIAM H. SKINNER AND RALPH F. MILES AS MEMBERS OF AND CONSTITUTING A QUORUM OF THE REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION

[No. 2-577A199. Filed May 3, 1978.]

*Charles W. Cooper, Cooper, Cox, Jacobs and Kemper*, of Madison, for appellant.

*Theodore L. Sendak*, Attorney General of Indiana, *Darrel K. Diamond*, Assistant Attorney General, for appellee.

GARRARD, P.J.—Jean Harrell appeals from the determination of the Review Board of the Indiana Employment Security Division that she is not entitled to benefits under the Special Unemployment Assistance Program (SUA) of the Emergency Jobs and Unemployment Act of 1974. 26 U.S.C. § 3304 note. The sole question presented is whether an elected

official is within the coverage of SUA when she becomes unemployed at the expiration of her term of office. We hold that she is not.

After serving two four-years terms as Jefferson County Treasurer the appellant, on January 24, 1977, filed a claim for benefits under SUA. After an initial denial of her claim she requested a hearing before a referee which was set for June 23, 1977. At the hearing Harrell testified that with regard to the required hours of work, the accumulation of vacation time, and pay raises her working conditions were subject to the control of the county commissioners. As a result she stated that she was treated in the same manner as all other county employees. Additional evidence was taken showing that Jefferson County contributed to the Social Security Fund and Public Employees' Retirement Fund in her name. Despite this evidence the Review Board refused to extend SUA benefits to Harrell reasoning that they were simply not available to an elected official.

In enacting SUA Congress intended to alleviate the effects of a rapidly increasing rate of unemployment by extending compensation to two groups; those who were ineligible for such assistance under existing state or federal law and those who, though eligible, had exhausted their benefit rights because of the length of their unemployment. 4 U.S. Code Cong. & Ad. News pp. 6760, 6761 (93rd Congress). Hence § 203(a)(1) of the act requires that for an individual to receive SUA benefits he must not be eligible for "compensation under any State or Federal unemployment compensation law for the period in question." It is apparent that one of the major groups of previously uncovered workers Congress sought to bring within the coverage of SUA consisted of state and local government employees. 4 U.S. Code Cong. & Ad. News, *supra* 6762.

However, benefits were not made available to all such employees. In defining the "employment and wages" which are to serve as the basis for computing benefits under the act, § 210(c) (1) and (2) states:

"(c) Employment and wages which are not covered by the State law may be treated, under sections 203(a)(1), 205(a), and 206(a), as though they were covered only if the employment —

(1)  is performed by an employee (as defined in section

3121(d) of the Internal Revenue Code of 1954 [section 3121(d) of this title], and

(2) constitutes employment as determined under section 3306(c) of such Code [section 3306(c) of this title] without regard to paragraphs (1) through (9), (10)(B)(ii), (14), (15), and (17) of such section."

Thus eligibility for SUA turns, in part, on whether an individual is an "employee" within the meaning of 26 U.S.C. § 3121(d). That provision states:

"(d) Employee. — For purposes of this chapter, the term 'employee' means —

(1) any officer of a corporation; or

(2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee. . . ."

We conclude that Harrell was not an employee under the usual common law rules for establishing the existence of an employer-employee relationship.

In accord with the common law test enacted[1] in 26 U.S.C. § 3121(d) courts have generally recognized that a critical factor in defining whether an individual is an employee is the degree of control exercised by the principal over the worker. *McCormick v. United States* (Ct. Cl. 1976), 531 F.2d 554, 558; *Ralls Inc. v. United States* (Ct. Cl. 1972), 470 F.2d 579, 581; *American Consult. Corp. v. United States* (3rd Cir. 1971), 454 F.2d 473, 477. The degree of control

---

1. In using the language "the usual common law rules" Congress did not intend to incorporate the definition of "employee" in the state of a worker's residence. Rather the question of defining an employee under this test is one of federal law. *Dimmitt-Rickhoff-Bayer Real Estate Co. v. Finnegan* (8th Cir. 1950), 179 F.2d 882, *cert. den.* 340 U.S. 823 (1950); *MFA Mut. Ins. Co. v. United States* (W.D. Mo. 1970), 314 F. Supp. 590. While these decisions were rendered under the Federal Insurance Contributions Act, 26 U.S.C. § 3101, *et seq.*, their reasoning is applicable here. In extending unemployment assistance to previously uncovered workers Congress surely intended that these benefits be available on a uniform basis across the nation. If eligibility could differ on a state by state basis depending upon the jurisdiction's definition of "employee" for some particular purpose (e.g., *respondeat superior*), the legislative purpose would be frustrated with little or no attendant gain in the respect due a state's right to define the primary rights and duties of its citizens. While we may resort to Indiana law as an aid to defining Harrell's relationship with the county we are nonetheless expounding federal law.

necessary is the right to determine not only the services to be performed but how the intended result is to be accomplished. In this regard the right to direct or control the individual need not be exercised by the employer, but the power to do so must exist. 2 Fed. Tax Regs. § 31.3121(d)−1(c) (1978). Absent this power to direct or control an individual's services, no employer-employee relationship exists.

While the application of the "common law" test for the purpose of defining the relationship between a unit of government and an elected official is not without pitfalls,[2] we are convinced that the requisite control is lacking in the present case. In the conventional sense a county treasurer is neither "hired" nor "fired." The duties required of a treasurer are subject not to the control of the county commissioners but to the will of the legislature. *Cf. Dortch v. Lugar* (1971), 255 Ind. 545, 266 N.E.2d 25, 34. Thus the term of office served, the site of the office, the receipt and disbursal of money coming to the county and the keeping of appropriate records as well as many other duties are prescribed by statute. IC 17-3-32-1 *et seq*. This lack of control on the part of the country commissioners over the activities of the county treasurer was recognized in *Vigo Township v. Board of Comm'rs. of Knox County* (1887), 111 Ind. 170, 12 N.E. 305. There a township brought suit against the county commissioners for funds misappropriated by a county treasurer while in office based, in part, on the theory that the county was required to respond for the treasurer's con-

---

2.   The "common law" test is incorporated in the Federal Insurance Contributions Act (FICA), 26 U.S.C. § 3101 *et seq.*, and the Federal Unemployment Tax Act (FUTA), 26 U.S.C. § 3301 *et seq.* as a tool for determining whether "employer" and "employee" contributions to these funds are to be required. It was passed as a direct repudiation of regulations proposed by the Commissioner of Internal Revenue that would have, to a degree, abandoned the "common law" or "control" test for one that emphasized the "economic reality" of the relationship between an individual and the person who had hired him. Convinced that this would extend the coverage of FICA and FUTA beyond its original intent, Congress promulgated the "common law" test in order to restore and reaffirm the law as it stood prior to the proposed regulations. *See Illinois Tri-Seal Products, Inc. v. United States* (Ct. Cl. 1965), 353 F.2d 216, 223-229; Broden, *Law of Social Security & Unemployment Insurance* (1962), §§ 2.06-2.10. The test was not intended to be applied to state and local government workers, however, as both FICA, 26 U.S.C. § 3121(b)(7) and FUTA, 26 U.S.C. § 3306(c)(7), specifically exclude them from their coverage. Thus the test was principally to apply to private employers and sought to distinguish the independent contractor from the agent or employee. While these categories are not wholly satisfying here, we are required to apply the "common law" test Congress has incorporated into SUA.

duct on the basis of *respondeat superior*. Rejecting this claim, the court stated:

"In the first place, a county treasurer is in no such sense the agent of the county as that the maxim *respondeat superior* can be invoked. This maxim has its foundation upon the right of the principal to select his agents, to control, direct and hold them responsible while in his service, and to discharge them on account of negligence, incompetency, or other delinquency, at his pleasure. If the principal has neither the right to select nor appoint, nor to direct, control or prescribe the duties of the agent, nor to discharge him in case of refusal to comply with the duties prescribed by the principal, the rule has no application.

\* \* \*

The treasurer is in no way dependent upon the board for his appointment to or continuance in office. His duties are all prescribed by law, and in the exercise of his office he is in no way subject to the control of the county board. He performs official duties for the State as well as for the county, and for every township and municipality within the territorial boundaries of the county. His duties are, therefore, not for the special or peculiar benefit of the county, nor for its interest, in any different sense than are they for the benefit or interest of the State, or the other municipalities in whose behalf the law requires the county treasurer to perform official service. He is a person selected in the manner prescribed by law, and has certain public functions to perform, which are all prescribed by statute and primarily laid upon him, and for the performance of which he is held civilly and criminally responsible. He is not, therefore, the agent of the county in respect to funds collected by him for townships; nor can the county be held answerable for his delinquency in the absence of an express statute making it liable. This is according to the principle deducible from the authorities, which hold, in effect, that a municipal corporation is not to be regarded as principal, and, therefore, liable for the defalcations and delinquencies of its public officers in failing to perform public duties which the law has laid upon them, and in respect to which the municipality is neither invested with corporate power nor charged with any corporate duty or statutory liability, and from the performance of which it derives no special advantage. The officer, under such circumstances, is regarded as an independent public agent, or quasi civil officer of the government, personally answerable for his misconduct or official delinquencies, and not the agent or servant of the municipality."

111 Ind. 172, 174, 12 N.E. 306, 307.

We agree that the existence of the applicable statutory duties is inconsistent with the notion that an elected official is, like an independent contractor, a "professional" with wide discretion in accomplishing a given task. Such statutes indicate a high decree of "control." However, in the one case decided on the specific issue before us the court, in denying SUA benefits to an elected town superintendent, characterized such statutory duties as control "more reasonably equated to that type of proscription which the law imposes on all individuals in the conduct of their work than it is to the type of direct control an employer exercises over the manner in which his employee carries out his duties." *Cool v. Ross* (1977), 57 App. Div. 450, 396 N.Y.S. 2d 76, 77. We agree that the control must emanate from the employer and not from statutory proscriptions in order for the "common law" test to be met. Since a county elected official is neither hired nor fired in the accepted meaning of those terms and her duties are prescribed by legislative enactment, the requisite control necessary for SUA benefits has not been established. *Cool v. Ross, supra.*

Furthermore, given the purpose that SUA was intended to serve we do not believe that Congress intended to bring elected public officials within its ambit. The act was a response to what the legislative history describes as a "cyclical downturn" in the economy and was triggered by a rising unemployment rate. 4 U.S. Code Cong. & Ad. News, *supra* 6756, 6758. Concerning the extension of coverage to state and local government workers the House Report states:

> "*State and Local Government.* — More than 8 million workers in State and local government, who are still outside the regular UI system, would be included under Title II. Particularly vulnerable are large numbers employed in this field, especially at lower skill levels, in public works and maintenance, and in hospital and food service occupations. Governments are subject to the same inflationary pressures and shortages as other employers and restructuring of priorities due to limitations on revenues may have considerable impact on these employees."

H.R. Rep. No. 93-1528, 2nd Sess. (1974).

Harrell's unemployment resulted not from "inflationary pressures or shortages" or indeed from any maladjustment in the economy but from the expiration of her term of office. It cannot be reasonably urged that

her unemployment was within the problem Congress was seeking to meet.[3]

Since Harrell is not an employee within the meaning of SUA, the determination of the Review Board is affirmed.

Hoffman, J. and Robertson, J. (sitting by designation) Concur.

NOTE — Reported at 375 N.E.2d 672.

---

3. Recent amendments to FUTA extending regular benefits to governmental employees specifically exclude elected officials. 26 U.S.C. § 3309(b)(3).