Dorrel T. HANKS, et al., Appellants,

v.

**LABOR AND INDUSTRIAL RELATIONS COMMISSION and Division of Employment Security, Respondents.**

No. WD 33091.

Missouri Court of Appeals,
Western District.

Aug. 31, 1982.

 

Craig F. Lowther, Springfield, for appellants.

Timothy P. Duggan, Jefferson City, for respondent, Labor & Indus. Rel. Com'n.

Rick V. Morris, Jefferson City, for respondent, Division of Employment Sec.

Before KENNEDY, P. J., and WASSERSTROM and MANFORD, JJ.

KENNEDY, Presiding Judge.

The appellants are real estate brokers employing real estate agents on a commission-sharing basis, who have been assessed for unemployment contributions for the years 1972, 1973, 1974, and the first three quarters of 1975. They have appealed from the adverse judgments of the Circuit Court of Cole County, which affirmed the orders of the Labor and Industrial Commission, in turn affirming decisions of Division of Employment Security appeals tribunals upholding the assessments. Their cases have been consolidated on appeal.

The assessment against appellant Hanks for the period in question was $12,777.15; against appellant Jones, $8,964.42; against appellant Moon, $2,164.12; and against appellant Leonard, $2,410.13. All of said figures are exclusive of interest.

■ We gather from the record and from the briefs that these appellants, along with others similarly situated, believed that they were not subject to the Unemployment Compensation Law with respect to compensation paid to real estate salesmen working under their auspices.[1] *Beal v. Industrial Commission,* 535 S.W.2d 450 (Mo.App.1975), settled that question in the affirmative, although while that case was pending, the

statute, § 288.034, was amended to exclude from coverage real estate salesmen remunerated solely by commissions, § 288.034.-12(11), RSMo 1978. That amendment became effective September 28, 1975. Prior to the amendment of the statute, however, according to *Beal,* and during the time involved in the present case, commissions paid to real estate salesmen by their sponsoring real estate brokers were covered by the Unemployment Compensation Law. Appellants in this case do not now dispute coverage.

*Active role of administrative referee in presentation of evidence as indicating partiality.*

■ Appellants claim, however, that they are entitled to reversal because "neither of the appeals referees[2] were 'impartial' as mandated and required by § 288.190, RSMo, for the reason that both appeals referees conducted the examination of the Division's witnesses, conducted the cross-examination, and produced, identified and admitted all documents into evidence."

The evidence presented by the Division of Employment Security in each case was presented by a single witness, Mr. Purcell, who was the supervisor of collections and files unit of the Division. It was he who produced, identified and explained the records upon which the Division's case was wholly based. The Division was not represented by an attorney and the referees elicited the testimony of the witness. The appeals referees also asked questions of the respective appellants. The procedure followed by the referees here does not by itself indicate partiality toward the Division of Employment Security or any inability or indisposition to deal with the case without partiality. Appellants point to no instance in the hearing record which would indicate the referees' hostility toward appellants or any bias in the Division's favor. They point only to their active participation in the hearing and their elicitation of evidence.

---

1. See Chapter 339, RSMo (1978), for statutes relating to real estate brokers and salesmen.

2. There was a separate hearing for each of the four appellants, and two different referees were involved.

These by themselves do not require reversal of the order. Nothing requires a judge to be inert in a hearing or trial, particularly one which he is called upon to decide. The case is unlike the only case cited by the appellants, which is *Jones v. State Dept. of Public Health and Welfare,* 354 S.W.2d 37 (Mo.App.1962). In that case Judge Cross wrote:

> A referee is a quasi-judicial officer. It is elementary that he must observe the strictest impartiality and show no favor to either of the parties by his conduct, demeanor or statements. We believe that such standard of judicial conduct was not observed in the course of claimant's hearing. On the contrary, it is our opinion that the referee went beyond the scope of his lawful authority by expressing opinions on the merits of the controversy and by making comments on the evidence amounting to unsworn testimony unfavorable to the interest of claimant—all preserved in the record certified to the director. We are convinced that claimant's rights were so prejudiced by those remarks that she was denied a fair hearing.

354 S.W.2d at 40. What Judge Cross said of the referee's conduct may not be said of either of the referees in the hearings now under review. Appellants' first point is denied.

*Collection of delinquent unemployment contributions as denying due process, where employees no longer eligible for benefits.*

■ Appellants' next point is that none of the real estate salesmen for whom contributions are assessed in these cases could ever collect any unemployment benefits, and that therefore the collection of unemployment contributions from appellants constitutes a violation of due process. In support of their position they cite cases which hold generally that property cannot be taken by the state (through its taxing power) without due process of law, including *Wisconsin v. J. C. Penney Co.,* 311 U.S. 435, 444, 61 S.Ct. 246, 249–250, 85 L.Ed. 267 (1940).

There is no argument about that principle, of course, but it is of no help to appellants.

Appellants do not develop the statement made in their brief, that real estate salesmen, upon whose compensation the unemployment contributions are based, cannot now and never could receive unemployment benefits. They may have in mind the fact that when the assessment against the appellants was made July 18, 1978, that commissioned real estate salesmen were no longer covered by the Unemployment Compensation Law, because of the amendment mentioned earlier, effective September 28, 1975. Since unemployment compensation benefits are based upon wages earned during the previous five calendar quarters, § 288.030(2), RSMo (Supp.1981), the argument would run, they could not qualify for benefits at any time after December 31, 1976.

Appellants cite us to no cases supporting that argument and the argument does not hold together. If the contributions had been made by the appellants as they came due, they would have been available for payout to the real estate salesmen who qualified (as well as all other eligible insured workers), until the statutory amendment became effective September 28, 1975. The amendment of the statute does not, as appellants would have it, wipe out appellants' liability for taxes already accrued.

As to appellants' assertion that real estate salesmen never could in the past receive unemployment benefits, we find no support for that statement anywhere in appellants' brief or oral argument, in the record or in the law books. Until the statutory amendment became effective September 28, 1975, which excluded commission real estate salesmen from coverage, they were eligible to receive unemployment benefits if they otherwise qualified for them. *Beal v. Industrial Commission,* supra.

*Statute of limitations.*

■ The assessments in question, as earlier noted, were made July 18, 1978. Appellants claim that claims for contributions due more than five years prior thereto were

barred by § 288.160.5(1), RSMo 1978. If so, assessments for the first quarter of 1973 and for the entire year of 1972 are barred.

The Division, on the other hand, claims that the statute of limitations was suspended during the period it was under a writ of prohibition preventing its assessing contributions against the appellants. A preliminary rule in prohibition was issued by Judge Kinder of the Cole County Circuit Court on December 10, 1976, prohibiting the assessment of unemployment contributions against appellants based upon the commissions of real estate salesmen. The writ was quashed by him on June 2, 1978.

The Division's position is correct. "... (I)t is the general rule that where a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the running of the statute is arrested during the pendency of such proceedings." *Ottenad v. Mount Hope Cemetery and Mausoleum Co.,* 176 S.W.2d 62, 64 (Mo.App.1943); 54 C.J.S. Limitations of Actions § 247. Eliminating the period the writ was in effect, the entire period for which contributions were assessed was within the five-year limitations period.

*Sufficiency of evidence to support assessment. Admission of business records.*

■ Finally, appellants challenge the sufficiency of the evidence to support the assessments. This point rests upon the contention that the Division's records establishing the amount of appellants' liability for the contributions were not entitled to admission into evidence under the Uniform Business Records as Evidence Act, § 490.-680, RSMo 1978.

The record does not support appellants' position. Mr. Purcell, who identified himself as the supervisor of collections and files unit of the Division, said that the records which he produced were maintained under him or his supervision; that entries were made on or about the dates of the occurrences; that the records were maintained in the regular course of the Division's business; and that the records reflected the "original determination and the information that brought about the original determina-

tion of the employer's liability in this matter". His testimony constituted a sufficient basis for the admission of the records. *State v. Jones,* 518 S.W.2d 322, 324–325 (Mo.App.1975); *Langdon v. Koch,* 393 S.W.2d 66, 69 (Mo.App.1965).

■ Appellants say that the "record is absolutely devoid of any showing as to how such figures were prepared or computed". The record does not support this statement. The records show the wages paid during the assessment period, the amounts of which were submitted by the appellants themselves, to which was applied the statutory contribution rate of 2.7% at the outset, ranging downward to 1.8%. This made a prima facie showing of the amount of the appellants' liability for contributions, and appellants do not pretend to point out in what particulars the calculations were not entirely correct.

The judgment is affirmed. The cause is remanded to the trial court, to be by it remanded to the commission for the computation of statutory interest. § 288.150, RSMo 1978.

All concur.