**KOONTZ AVIATION, INC., Appellant,**

v.

**LABOR AND INDUSTRIAL RELATIONS COMMISSION and Division of Employment Security, Respondents.**

**No. WD 33901.**

Missouri Court of Appeals,
Western District.

April 5, 1983.

Vance C. Preman, Kansas City, for appellant.

Susan P. Haag and Rick V. Morris, Jefferson City, for respondent, Div. of Employment Sec.

Timothy P. Duggan, Jefferson City, for respondent, Labor & Industrial Rel. Comn.

Before WASSERSTROM, P.J., and TURNAGE and CLARK, JJ.

TURNAGE, Judge.

A deputy for the Division of Employment Security determined in an administrative proceeding that persons who delivered baggage and drove limousines for Koontz Aviation, Inc. performed services for "wages" in the "employment" of Koontz, as those terms are defined in §§ 288.034 and 288.036 RSMo 1978, and that Koontz was therefore subject to assessment for contributions under the Employment Security Act. On appeal, the appeals tribunal confirmed the deputy's determination, and the Labor and Industrial Relations Commission denied an application for review. The decision of the appeals tribunal thereby became the decision of the Commission. Section 288.200.1 RSMo 1978. On appeal to the circuit court, the deputy's determination was affirmed.

Koontz first contends that because commission-drivers who deliver baggage or drive limousines are not specifically referred to in § 288.034.6, they are not covered by the employment security law. Koontz further contends that even if its drivers are included in § 288.034.6, it meets the criteria set forth in § 288.034.5 for ex-

emption from the employment security law. Affirmed.

Koontz entered into an agreement with certain airlines to deliver baggage to passengers when such baggage had not been available for the passengers to pick up at the conclusion of their trip. To make these deliveries, Koontz engaged a number of drivers who drove their own cars and paid their own expenses. The airlines designated certain hours each day when the drivers were to pick up the baggage at the terminal for delivery to the passengers.

Koontz' baggage delivery service was principally organized by R. Miller, who had previous experience in this field. Koontz authorized Miller to recruit other drivers for this service, and Koontz supplied each driver with a magnetic sign bearing the Koontz name to facilitate the drivers' entry and exit from the airport terminal. About 95% of the time the airlines would contact Miller to request a driver, and the other 5% of the time the airlines would contact Koontz with this request.

When a driver picked up baggage, the airline gave him a baggage delivery order. The driver signed this order to show his receipt of the baggage and the passenger signed the receipt when his baggage was delivered to him. The drivers presented a copy of their delivery orders to Koontz, and Koontz paid each driver 35% of the charges, which were fixed by the airlines. Koontz paid Miller 10% of the amount paid to the various drivers.

In addition to its baggage delivery service, Koontz owned seven limousines and obtained a driver for each of them. The driver signed a lease form which basically provided that they would lease a limousine for an indefinite term. Koontz paid all expenses for the operation of the vehicles with the exception of gasoline, which was purchased by the drivers. Rates for the limousine service were fixed by the City of Kansas City.

When Koontz was notified that limousine service was needed, Koontz contacted the drivers, who provided the service. Each driver provided telephone numbers where they could be reached, and some obtained paging devices which allowed Koontz to contact them at all times. The drivers kept a log of their trips, and were required to report all of their receipts to Koontz. Koontz paid each driver 35% of the total collected.

The appeals tribunal applied § 288.034.5 which provides:

5. Irrespective of the usual tests for determining the existence of the independent contractor relationship as at common law, service performed by an individual for wages shall be deemed to be employment subject to this law unless it is shown to the satisfaction of the division that

(1) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and

(2) Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(3) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

The tribunal concluded that Koontz had failed to show that it met the section's three criteria for exemption from the employment security law.

Koontz contends that the tribunal should have instead applied § 288.034.6 to find that its drivers were not covered by the employment law. That subsection provides:

6. The term "employment" shall include service performed for wages as an agent-driver or commission-driver engaged in distributing meat products, vegetable products, fruit products, bakery products, beverages (other than milk), or laundry or drycleaning services, for his principal; or as a traveling or city salesman, other than as an agent-driver or commission-driver, engaged upon a full-time basis in the solicitation on behalf of, and the

transmission to, his principal (except for sideline sales activities on behalf of some other person) of orders from wholesalers, retailers, contractors, or operators of hotels, restaurants, or other similar establishments for merchandise for resale or supplies for use in their business operations...

Koontz claims that the rule of statutory construction *expressio unius est exclusio alterius* should be followed in applying subsection 6 to this case. Koontz reasons that since the section expressly mentions commission-drivers who distribute meat, vegetables, fruits, bakery products, beverages, laundry, and drycleaning, it follows that commission-drivers who deliver baggage or who drive limousines to transport passengers are not covered. This court discussed that rule of statutory construction in *City of Lexington ex rel. Menefee v. Commercial Bank,* 130 Mo.App. 687, 108 S.W. 1095, 1096 (1908):

> The maxim that the expression of one thing is the exclusion of others not expressed is not to be accepted as a hard and fast canon of statutory construction, but as a guide to point to the legislative intent which, when ascertained, should dominate the construction to be placed on the enactment. *McFarland v. Railway,* 94 Mo.App. [336] loc. cit. 342, 68 S.W. 105. It has been said, if there is some special reason for mentioning one and none for mentioning the other, the absence of any mention of the latter will not operate as an exclusion, and that the maxim does not apply to a statute in which mention is made by way of example, or made in affirmance of existing law or to remove doubts, or when the context shows a different intention. To ascertain the intention of a statute it should be read in view of all the surrounding facts and circumstances under which it was enacted, and, it may be added, "common sense and good faith are the leading and principal characteristics of all interpretation."

Thus, a determination of whether Koontz' drivers are exempted by virtue of the fact that they are not mentioned in § 288.034.6 requires an examination of the circumstances under which that section was enacted to determine if the examples provided therein are exclusive or merely exemplary.

The Missouri legislature added subsection 6 to § 288.34 in 1972 in response to a change in the Federal Unemployment Compensation Law which Congress adopted in the Employment Security Amendments of 1970, Pub.L. No. 91–373, S 102, 84 Stat. 695 (1970). There, Congress amended the law's definition of "employee" to conform to the meaning contained in 26 U.S.C. § 3121(d), except that subparagraphs (B) and (C) of paragraph (3) of that section were not applicable. The legislative history of Public Law 91–373 states that "[t]hose who would be affected by this change are individuals who are not employees under common law rules, such as agent-drivers and outside salesmen." 1970 U.S.Code Cong. & Ad. News 3606, 3608.

The Missouri legislature added subsection 6 to insure that the Missouri employment security law was in compliance with the federal law. Because the Missouri legislature derived the enumeration of drivers which appears in subsection 6 directly from the federal Employment Security Amendments of 1970, the legislative history of that amendment is the appropriate source for determining the intended inclusiveness of the enumeration contained in subsection 6. That legislative history reveals that the operative intent of the amendment's framers was to extend the law's coverage to include agent drivers. There is no indication that the amendment's framers intended to include only agent drivers engaged in delivering the listed products.

■ This intent in combination with the common-sense meaning of subsection 6 of § 288.034 lead this court to the conclusion that the Missouri legislature intended that the drivers of the products named in subsection 6 be viewed as exemplary rather than exclusive. Applying that conclusion to this case, baggage drivers and limousine drivers would be covered by the employment security law, regardless of the fact that they are not specifically enumerated in subsection 6.

Koontz also contends that even if the baggage and limousine drivers are not excluded from coverage by virtue of the fact that they are not mentioned in subsection 6, they are nonetheless excluded because, contrary to the administrative findings, the three conditions for exclusion enumerated in subsection 5 were in fact met. Koontz' position is that the evidence did not support the finding that it failed to meet subsection 5's three criteria for exclusion. The standard for judicial review of decisions by the Labor and Industrial Relations Commission in employment security cases is set forth in § 288.210 RSMo 1978:

> In any judicial proceeding under this section, the findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law.

Koontz concedes that subsection 5 requires that all three of its conditions be met before an exclusion can be found. Thus, in order for the previous findings to be affirmed, this court need only find that Koontz' failure to meet one of the conditions is supported by competent and substantial evidence.

The last of the three conditions requires a showing that the individual is customarily engaged in an independently established trade, occupation, profession, or business. In considering an identically worded statute, the court in *Vermont Securities, Inc. v. Vermont Unemployment Compensation Commission,* 118 Vt. 196, 104 A.2d 915, 917[2] (Vt.1954) held:

> The adverb "independently" clearly modifies the word "established", and must carry the meaning that the trade, occupation, profession or business was established, independently of the employer or the rendering of the personal service forming the basis of the claim. The present tense "is" indicates the individual must be engaged in such independent activity at the time of rendering the service involved. "Customarily" means usually, habitually, regularly.. *Fuller Brush Co. v. Industrial Comm.,* 99 Utah 97, 104 P.2d

201, 129 A.L.R. 511. The language used contemplates that one engaged in an independently established trade, occupation, profession or business has a proprietary interest therein to the extent that he can operate it without hindrance from any individual whatsoever. *Murphy v. Daumit,* 387 Ill. 406, 56 N.E.2d 800; *Life & Casualty Ins. Co. v. Unemployment Compensation Comm.,* 178 Va. 46, 16 S.E.2d 357. An established business is one that is permanent, fixed, stable and lasting. *Unemployment Compensation Comm. v. Collins,* 182 Va. 426, 29 S.E.2d 388.

In *Revlon Service, Inc. v. Employment Division,* 30 Or.App. 729, 567 P.2d 1072, 1075 (1977), the court considered another statute worded identically to subsection 5 of § 288.-034, and concluded:

> The ultimate issue is whether the person performing the services is an entrepreneurial enterprise enjoying such a degree of economic independence that the enterprise can survive any relationship with the particular person contracting for the services.

According to the definition given in *Vermont Securities,* the drivers in this case had not established their occupation independent of Koontz at the time that they rendered the services under consideration. The facts of this case demonstrate that the drivers were dependent upon Koontz for their business, in that the drivers delivering baggage did so only by virtue of Koontz' contract with the airlines, and in that the limousine drivers received all of their assignments from Koontz and utilized its limousines.

This case does not satisfy the test set forth in *Revlon,* because the drivers could not have survived independent of their relationship with Koontz. Thus, there is competent and substantial evidence that Koontz failed to meet subsection 5(3)'s requirement that the parties be shown to be customarily engaged in an independently established occupation. That being the case, the baggage and limousine drivers were employees with-

in the meaning of Chapter 288, and Koontz was subject to assessment for contributions under the Employment Security Act.

The judgment is affirmed.

All concur.