**HERITAGE EXTERIORS, INC.,**
Appellant,

v.

**The LABOR AND INDUSTRIAL RELATIONS COMMISSION OF the STATE of Missouri, DIVISION OF EMPLOYMENT SECURITY, Respondent.**

**No. WD 34886.**

Missouri Court of Appeals,
Western District.

April 24, 1984.

Charles F. Speer, McDowell, Rice & Smith, Chartered, Kansas City, Kan., Donald L. Crow, Kansas City, for appellant.

Rick V. Morris, Alan J. Downs, Jefferson City, for respondent.

Before TURNAGE, C.J., KENNEDY, J., and SWOFFORD, Senior Judge.

TURNAGE, Chief Judge.

The Division of Employment Security issued an administrative determination that Earl Edmunds was an employee of Heritage Exteriors, Inc. within the meaning of § 288.034.5, RSMo (Supp.1983).[1] This determination was upheld after a hearing by an Appeals Tribunal. The Labor and Industrial Relations Commission denied an application for review. On appeal to the circuit court the decision was affirmed.

Heritage contends Edmunds was an independent contractor and not an employee. Affirmed.

Heritage sells and installs steel siding. Ninety-nine percent of its business is devoted to siding residences. The people who install the siding are called applicators. Applicators work in crews which generally consist of two to three people.

Heritage designates one applicator as crew leader for each job and then the crew leader is free to recruit other applicators to assist him. Heritage exercises control to the extent that it would not allow on one of its jobs an applicator who previously has proved to be unsatisfactory. Heritage pays a flat rate for the application of one square, i.e. 100 square feet of siding regardless of the number in the crew. The crew leader may make any agreement he can with other people in his crew as to the amount each of them will be paid. Generally the crew leader tells Heritage the amount to pay each applicator and Heritage pays each applicator that amount. Heritage does not deduct taxes from the amount paid each applicator but simply files a form with the IRS stating the amount it has paid each person. An applicator may work for different companies although when doing a particular job the applicator is working only for one company.

The crew is not paid until the customer has given written notice of satisfaction. However, if Heritage receives a complaint about work in progress it will investigate. If Heritage finds that an applicator is not doing a satisfactory job, it will require that applicator to leave the job. Complaints received after the job has been completed are referred to the crew leader and it is his responsibility to see that each complaint is remedied. Heritage will not pay until the complaints have been satisfied and the customer signifies to this in writing.

Heritage locates applicators in various ways but it is possible for a person to walk in off the street and be hired if his references prove to be satisfactory. The president of Heritage testified at the hearing before the Appeals Tribunal that Heritage is very careful in its selection of applicators because it is concerned about its reputation. Heritage will refuse to allow an applicator to work on a job if the applicator has refused many jobs, does shoddy work, or refuses to repair a job.

The evidence further revealed that applicators never advertise. In fact, the president of Heritage stated that it would not hire an applicator who advertises because

1. All sectional references are to Missouri's Revised Statutes, 1978, unless otherwise noted.

the applicator then would be the company's competitor.

At issue here is whether or not Edmunds was an employee of Heritage during the third and fourth calendar quarters of 1979.

Edmunds was recruited to work as an applicator on a Heritage job by crew leader Jeff Zalinski. Upon completion of the job, Heritage paid Edmunds the amount specified by Zalinski. Thereafter, Edmunds filed for unemployment compensation and, consequently, this controversy arose.

■ Heritage contends that Edmunds was an independent contractor and, thus, not an employee for which it was required to make contributions under the Employment Security Law. Heritage relies upon cases which define who is an independent contractor. However, these cases have no application in view of the provisions of § 288.034.5. That section provides:

5. Irrespective of the usual tests for determining the existence of the independent contractor relationship as at common law, service performed by an individual for wages shall be deemed to be employment subject to this law unless it is shown to the satisfaction of the division that

(1) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and

(2) Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(3) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

The statute illustrates legislative intent to include within the employment security law those who would qualify as independent contractors unless they meet the conditions set out therein. Its conjunctive language clearly requires that each of the three conditions in Subdivision 5 be met.

Because each of the three conditions must be satisfied to find Edmunds an independent contractor, it is necessary to discuss only one condition which was not met. The third requirement states that the individual must be customarily engaged in an independently established trade, occupation, or business. This court considered that provision in *Koontz Aviation, Inc. v. Labor and Industrial Relations Commission*, 650 S.W.2d 331, 334 (Mo.App.1983). In *Koontz* this court quoted from *Vermont Securities, Inc. v. Vermont Unemployment Compensation Commission*, 118 Vt. 196, 104 A.2d 915, 917[2] (1954) as follows:

The adverb "independently" clearly modifies the word "established", and must carry the meaning that the trade, occupation, profession or business was established, independently of the employer or the rendering of the personal service forming the basis of the claim. The present tense "is" indicates the individual must be engaged in such independent activity at the time of rendering the service involved.

Thus, in this case it was necessary for Heritage to show that Edmunds had established his trade as a siding applicator independently of Heritage or independently of the personal service forming the basis of this claim. The further requirement is that Heritage show that Edmunds was engaged in such independent activity at the time of rendering the service to Heritage. The Appeals Tribunal found that Edmunds was not engaged in an independently established trade. This court's inquiry into the decision of the Labor and Industrial Relations Commission is limited to a determination of whether or not the Commission's factual findings are supported by competent and substantial evidence. Section 288.210. The only evidence in this case was offered by the president of Heritage. From his testimony it is clear that Edmunds was not engaged in an independently established trade at the time he worked for Heritage. Edmunds had no independent status apart from Heritage. His only role as an applicator came about because of his employment on the Heritage job. Ed-

628

munds did not solicit customers for the application of siding but rather depended wholly upon Heritage or similar companies for his employment. In fact, he could not work for Heritage if he did advertise since Heritage claimed it then would consider him a competitor.

■ Heritage contends that Edmunds met each of the requirements necessary to be classified as an independent contractor. However, this illustrates that Heritage has misunderstood § 288.034.5. In view of that section, it is no longer relevant whether a worker has achieved the status of independent contractor. Rather, an employer must prove that a worker satisfies the three express requirements of § 288.-034.5 in order to avoid an obligation to contribute under the Employment Security Law.

■ The finding of the Appeals Tribunal which became the decision of the Labor and Industrial Relations Commission upon denial of the application for review, § 288.200.-1, is supported by substantial and competent evidence.

The judgment is affirmed.

All concur.

