**AMERICAN YEARBOOK CO., INC.,**
**Plaintiff/Respondent,**

v.

**LABOR AND INDUSTRIAL RELATIONS COMMISSION and Division of Employment Security, Defendants/Appellants.**

No. WD 39153.

Missouri Court of Appeals,
Western District.

Nov. 17, 1987.

Susan P. Haag and Sandy Bowers, Jefferson City, for Missouri Division of Employment Security.

Alan J. Downs, Jefferson City, for Labor & Industrial Relations Com'n.

J. Kent Lowry, Jefferson City, for plaintiff/respondent.

Before CLARK, P.J., and TURNAGE and MANFORD, JJ.

TURNAGE, Judge.

The Labor and Industrial Relations Commission affirmed the determination made by the Division of Employment Security that sales representatives employed by American Yearbook Co., Inc. were covered by the Employment Security Law, Chapter 288, RSMo 1978. On appeal, the circuit court reversed the Commission and held the representatives were not covered. Reversed and remanded.

Thomas W. Smith filed a claim for unemployment compensation in which he stated that he was employed by Josten's, Inc. and worked as a salesman for American Yearbook. A hearing was held in November of 1981 to determine whether or not Smith performed services for wages in employment by Josten's during the first, second and third calendar quarters of 1980. The only testimony except for formal material came from the corporate tax manager and the regional sales manager of Josten's. That testimony revealed that American Yearbook is a separate corporation but is wholly owned by Josten's. The witnesses produced a contract which is signed by American Yearbook and sales representatives and described the relationship between those two. The business of American Yearbook is the printing and sale of school yearbooks and other publications and, in addition, the sale of other items connected with schools, such as T-shirts. The company assigned a territory to each representative, and the representative was obligated to devote his full time and best efforts to the selling of American Yearbook products. He was required to make such reports to the company as were deemed necessary by the company. The company supplied a confidential price list to the representative, which gave the price the company would charge the representative for each product the company sold. The representatives were free to charge any price they determined for the sale of the products but were obligated to pay the company the price set by the company. The difference between the amount charged by the company and the price charged by the representative was the representative's commission. All receipts for sales were sent to the company and the company kept a record of purchases and sales made by each representative. Settlements between the company and representative were made once or twice a year.

To assist the representative between settlements, the company gave each a monthly amount, labeled as a draw, which was later charged against the amount due the representative.

The company had the right to terminate the representative at any time if he failed to live up to the terms of the contract.

The testimony revealed that the company did not control the time and manner in which the representative performed his sales duty; he was free to set his own hours and to decide which school within his territory he called on at any particular time. The representative could not sell any item produced by a competitor of American Yearbook and agreed not to sell products similar to those sold by American in the schools in his territory for a year after the termination of the contract.

At the conclusion of that hearing, the appeals tribunal found that Smith was not an employee of Josten's but worked under an agreement with American Yearbook.

Shortly after the Smith hearing the Division instituted an investigation into

whether or not individuals engaged as sales representatives by American Yearbook performed services for wages in employment within the meaning of §§ 288.034 and 228.036, RSMo 1978.[1] A deputy determined that the individuals involved did come within the provisions of Chapter 288. American Yearbook filed an appeal and it was agreed that the appeal would be determined by considering the evidence adduced before the appeals tribunal on the claim of Smith because that evidence fully detailed the relationship between the representatives and American. After considering that evidence the appeals tribunal affirmed the deputy's determination that individuals engaged in sales for American Yearbook were covered by Chapter 288. That decision was affirmed by the Commission, but on appeal by American Yearbook, the circuit court reversed the Commission on finding that American Yearbook did not exercise control over its sales representatives. The Division appealed from that judgment contending that under the holding in *Koontz Aviation, Inc. v. Labor and Industrial Relations Commission*, 650 S.W.2d 331 (Mo.App.1983), the sales representatives are covered. American Yearbook contends that because it did not exercise control over the means or methods by which sales representatives perform their duties that such representatives were independent contractors and American Yearbook was not an employer subject to the law. American further contends that the Division is prohibited by collateral estoppel from deciding whether or not American is an employer subject to the law because the Smith determination became final when no appeal was filed.

*Koontz* pointed out that § 288.034.5 provides that irrespective of the usual tests for determining the existence of the independent contractor relationship as at common law, service performed by an individual for wages shall be deemed to be employment subject to the law unless three conditions are shown to exist. American Yearbook focuses entirely on the first provision, which requires the individual to be free from control or direction over the performance of service both under the contract and in fact. American fails to consider the other two conditions. The second condition is that the service is either outside the usual course of the business for which such service is performed or it is performed outside all of the places of business of that enterprise. The third condition is that the individual is customarily engaged in an independently established trade, occupation, profession or business. *Koontz* held that all three conditions must be met before an employer can be found to be excluded from coverage. *Id.* at 334. In *Koontz*, this court quoted from *Vermont Securities, Inc. v. Vermont Unemployment Compensation Commission*, 118 Vt. 196, 104 A.2d 915, 917[2] (1954), in which the court had considered the third requirement of an identically worded statute and held that the trade, occupation, profession or business must be established independently of the employer or the rendering of the personal service forming the basis of the claim.

In an article on the scope of unemployment compensation laws, the author observes with respect to statutes with the wording of § 288.034.5(3):

> The double requirement, that the worker's occupation be "independently established" and that he be "customarily" engaged in it, clearly calls for an enterprise created and existing separate and apart from the relationship with the particular employer, an enterprise that will survive the termination of that relationship.

Willcox, *The Coverage of Unemployment Compensation Laws*, 8 Vand.L.Rev. 245, 265 (1955). The reason for the third requirement is stated in a discussion of commission salesmen just like the sales representatives here:

> [T]he control test tends to exclude from coverage many persons who, fully as much as common-law servants, are dependent on their jobs for their daily living and are exposed to the risk of unemployment. Many a commission salesman, for example, works full time for a single concern and derives his whole in-

---

**1.** All sectional references are to Missouri's Revised Statutes, 1978, unless otherwise stated.

come from that source, and if the relationship is severed, finds himself in the same plight as any other worker who has been discharged. He may (or may not) have enjoyed such freedom from detailed control of his activities as to persuade a court that he was an independent contractor at common law, but if he did, his freedom was not the kind of independence which commonly rids the true entrepreneur of the risk of unemployment. *Id.* at 248.

*Koontz* held that the person rendering the service must be able to survive independent of a relationship with the person contracting for his service before it can be said that the third requirement is satisfied. 650 S.W.2d at 334. It is clear that the third requirement means that the person rendering the service must be engaged in a trade, business, occupation, or profession that will survive the termination of the relationship with the business contracting for that person's services. In this case, the sales representatives of American Yearbook had no independently established business separate and apart from American Yearbook. They were wholly dependent on American Yearbook for the products they sold and for the establishment of the territory in which they sold. Without American Yearbook, the sales representatives had no business.

It is not necessary to determine the interesting question of whether or not the representatives in this case performed their service with or without control from American Yearbook. Since American Yearbook was required to establish all three requirements set out in § 288.034.5, it is sufficient if any one of the three is found to be lacking. Thus, it could be conceded without deciding that the sales representatives performed their duties without control from American Yearbook; yet, because the representatives had no independently established business separate and apart from American Yearbook, they do not qualify as independent contractors within the meaning of the Employment Security Law.

■ American Yearbook further contends that the determination that Smith was not an employee of Josten's within the meaning of the law bars a later determination that sales representatives of American Yearbook are employees within the meaning of the law. In *Bresnahan v. May Department Stores Co.*, 726 S.W.2d 327 (Mo. banc 1987), the court held that collateral estoppel, or as sometimes called, issue preclusion, applies to issues raised and decided in the administrative proceedings. The court there stated that the purpose of the doctrine is to prevent the same parties from relitigating issues which have been previously litigated with adverse results. The court stated the four prong-test articulated in *Oates v. Safeco Inc. Co. of America*, 583 S.W.2d 713, 719 (Mo. banc 1979). 726 S.W.2d at 220[2]. The first test set out is whether the issue decided in the prior adjudication is identical with the issue presented in the present action. In this case, it is apparent that the same issue was not litigated in the two proceedings. In the first hearing, the question was whether or not Smith was an employee of Josten's. The determination was made that Smith did not work for Josten's during the first three calendar quarters in 1980 but that he worked under an agreement with American Yearbook. For that reason, the conclusion was that Smith did not perform service for Josten's within the meaning of Chapter 288. The evidence clearly revealed that American Yearbook was a separate corporation from Josten's although Josten's owned American Yearbook. The finding only concerned whether or not Smith was an employee of Josten's. The issue of whether or not Smith was an employee of American Yearbook was not decided, although it was mentioned that he had an agreement with American. The issue in this case is whether sales representatives of American Yearbook were employees within the meaning of the law. Thus, there is no basis on which to apply collateral estoppel to preclude the Division from determining that sales representatives of American Yearbook are covered by the Employment Security Law.

The judgment is reversed, and this cause is remanded with directions to enter judg-

ment affirming the determination made by the Commission that sales representatives of American Yearbook are covered by the provisions of Chapter 288.

All concur.

