In re Eric P. PEARSON d/b/a A–1 Construction Company, Debtor.

Eric P. PEARSON d/b/a A–1 Construction Company, Plaintiff,

v.

MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, DIVISION OF EMPLOYMENT SECURITY; and United States of America, Defendants.

Bankruptcy No. 87–03003–BSS. Adv. No. 88–0021–BSS.

United States Bankruptcy Court, E.D. Missouri, E.D.

June 6, 1988.

Charles H. Huber, St. Ann, Mo., for plaintiff.

Robert D. Metcalfe, Tax Div., U.S. Dept. of Justice, Washington, D.C., Missouri Department of Labor and Indus. Relations, Div. of Employment Sec., Jefferson City, for defendants.

## MEMORANDUM OPINION

BARRY S. SCHERMER, Bankruptcy Judge.

### INTRODUCTION

This matter is before the Court upon the Complaint of the Plaintiff, Debtor, Eric P.

Pearson (hereinafter "Mr. Pearson") to determine if he is liable to the State of Missouri for unemployment taxes and to the United States of America for unpaid federal withholding (hereinafter "withholding taxes"), Federal Insurance Contribution Act (hereinafter "FICA") and Federal Unemployment Tax Act (hereinafter "FUTA") taxes. Mr. Pearson contends that the men who work for his company are independent contractors and not employees. The Defendants' argue otherwise and assert tax liability against Mr. Pearson for failure to withhold and pay state employment contributions and federal withholding, FICA, and FUTA.

## JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151 and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(B).

## FACTS

Mr. Pearson is employed by McDonnell Douglas Corporation and is currently a machine repairman. Mr. Pearson also operates a proprietorship under the name of A-1 Construction Company (hereinafter "A-1"). The business of A-1 is remodeling single family residences and construction of room additions. Mr. Pearson started his remodeling business by performing all of the work himself. Shortly after he started advertising, he had more work then he could handle himself. He contacted his friends and co-workers at McDonnell Douglas as well as the fathers of his sons friends. These men provided a pool of workers who performed work as plumbers, painters, concrete finishers, roofers and laborers. Mr. Pearson would contract with the home owners for the remodeling or repair work to be performed. Based upon the nature of the work, rough drawings or, in some instances, blueprints would be drafted. Certain men such as licensed electricians and plumbers would then develop and transmit a bid to Mr. Pearson for their

particular work. With respect to laborers, no drawings were presented and Mr. Pearson would personally direct their activity (e.g. hauling materials away from the job site, digging holes and generally providing unskilled labor assistance at the job site). All workers were paid each Friday by check. Laborers were paid the rate of $5.00 per hour and carpenters at the rate of $8.00. During the period of at least September 24, 1985 to September 24, 1986, Mr. Pearson obtained and paid for a workers compensation and employers liability insurance policy.[1] Occasionally he would "loan" a ladder or power saw to the workers.

## DISCUSSION

### UNITED STATES

FICA and FUTA are imposed on every employer with respect to individuals in his employ based on the wages paid. 26 U.S.C. § 3121(d)(2) defines "employee" under FICA as "any individual who under the usual common law rules applicable in determining the employer-employee relationship has the status of an employee." A similar definition is contained in 26 U.S.C. § 3306(i) dealing with FUTA. An excellent development of the common-law test for ascertaining the existence of the employer-employee relationship is presented in *Illinois Tri–Seal Products, Inc. v. United States*, 353 F.2d 216, 173 Ct.Cl. 499 (Ct. of Claims 1965).

The issue here is to determine, on the basis of the facts cited above, whether or not the A-1 workers were employees within the meaning of §§ 3121(d)(2) and 3306(i) of the Internal Revenue Code, both of which "specifically adopt the common-law test for ascertaining the existence of the employer-employee relationship." *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 3, 82 S.Ct. 1125, 1127, 8 L.Ed.2d 292 (1962). The burden of establishing the workers' status as independent contractors is upon the Plaintiff. *Beatty v. Halpin*, 267 F.2d 561 (8th Cir.1959) and *Chase Mfg., Inc. v. United States*, 446 F.Supp. 698 (E.D.Mo.1978).

Whether the person for whom the services are performed was an "employer" with-

---

1. One claim was asserted against the policy but was not honored since the insurance lapsed. Mr. Pearson then paid the hospital bill of the worker who presented the claim.

in the common-law meaning of that term is to be made on the basis of looking to the substance of the arrangement and giving weight to all relevant factors. The burden of establishing the workers status is upon the plaintiff *Chase Mfg., Inc. v. United States, supra* at p. 701. *Illinois Tri–Seal Products, Inc., supra*, 353 F.2d at p. 228. These factors include but are not limited to the following:

1. The right to control the manner in which the service is performed.

2. Whether the person rendering the service has a substantial investment in his own tools or equipment.

3. If the person performing a service undertakes a substantial cost (e.g. by employing and paying his own laborers).

4. Whether the person performing a service has an opportunity to profit.

5. The degree, if any, involving a special skill of the worker.

6. If the relationship between the person rendering the service and the person receiving the service is permanent.

7. Whether or not the principal has the right to discharge the individual.

8. The method of payment (whether by job or by time).

9. Whether the parties believe they are creating an employer-employee relationship or a principal-independent contractor relationship.

■ While all factors are to be considered, the major factor is whether the principal had the right to control the manner and method of performing the work, as well as the result to be accomplished. In the case *sub judice* Mr. Pearson testified that he directed the work of the laborers and carpenters. They had no diagrams from which to work and required Mr. Pearson's supervision since their function was not self evident. Their method of performing the work was controlled by Mr. Pearson. Both the laborers and carpenters were paid on an hourly basis so they had no real opportunity for profit. In addition, there was no evidence that any of the laborers had a substantial investment in their own tools or equipment or that the carpenters undertook a substantial cost (e.g. by the employment of their own laborers or apprentices). Occasionally Mr. Pearson would loan a ladder, power saw or wheelbarrow to these workers.

Having found some of the workers of A–1 were employees, the Court does not have to reach a similar conclusion regarding the licensed electricians and plumbers. Since the Debtor offered no testimony regarding the amount of assessed taxes, if any, which were attributable to such skilled workers, and those attributable to the laborers; this Court has not been provided the facts necessary to distinguish the two groups even if different legal treatment were deemed prudent. Because this burden of proof was the Debtor's, the liability of the Debtor with respect to taxes attributable to skilled workers is found along with liability as to taxes attributable to laborers. Since the parties stipulated as to the assessed tax liability, the Court finds the Debtor liable to the United States in the amount of the taxes assessed (exhibits A, B, C, D, E and F).

## MISSOURI DIVISION OF EMPLOYMENT SECURITY

■ The test under Missouri law regarding whether an employer-employee relationship exists is found at § 288.034–5 R.S.Mo. (1986) which states:

On 288.034 Employment defined.
5. irrespective of the usual tests for determining the existence of the independent contractor relationship as at common law, service performed by an individual for remuneration shall be deemed to be employment subject to this law unless it is shown to the satisfaction of the division that:

(1) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and

(2) Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(3) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

Each of the three conditions must be satisfied to find an independent contractor relationship. *First Affiliated Securities, Inc. v. Labor & Industrial Rel.*, 738 S.W. 2d 495, 497 (Mo.App.1987). *First American YearBook v. Labor & Industrial Rel.*, 739 S.W.2d 755, 757 (Mo.App.1987).

Based upon this Court's conclusion that the workers for Mr. Pearson were employees under the definition imposing FICA and FUTA taxes because the workers were under the control or direction of Mr. Pearson, such workers failed to meet the first requirement under Missouri law. It necessarily follows that Mr. Pearson has failed to meet his burden of proof and the workers are employees. *Koontz Aviation, Inc. v. Labor & Industrial Rel.*, 650 S.W.2d 331, 334 (Mo.App.1983).

Accordingly, since the parties stipulated as to the assessed tax liability, the Court finds that Mr. Pearson is liable under the Missouri Employment Security Law for contributions in the amount of $6,477.57.

IT IS SO ORDERED.