**HERRON ENTERPRISES, INC., Appellant,**

v.

**The LABOR AND INDUSTRIAL RELATIONS COMMISSION OF the STATE of MISSOURI, the DIVISION OF EMPLOYMENT SECURITY, and, Paul Biester, Dan Winchel, Vari Vasishta and Tom Neal, Respondents.**

**No. WD 39966.**

Missouri Court of Appeals, Western District.

Aug. 9, 1988.

---

Johnny K. Richardson, Hawkins, Brydon, Swearengen & England, Jefferson City, and Joseph J. Lyman, Lyman and Rales, Washington, D.C., for appellant.

Ninion S. Riley, Sandy Bowers, Jefferson City, for respondent, Div. of Employment Sec.

James B. Crenshaw, Jefferson City, for respondent, Labor and Indus. Relations, Com'n.

Before CLARK, P.J., and
LOWENSTEIN and FENNER, JJ.

LOWENSTEIN, Judge.

This is an appeal from a decision by Missouri's Labor and Industrial Relations Commission (Commission) which determined that certain individuals performed services for "wages" in "employment" as those terms are defined in Sections 288.034 and 288.036, RSMo 1978, thus making the appellant subject to contributions under the Employment Security Law. Appellant Herron Enterprises, Inc. (Herron) asserts the Commission's findings are unsupported by competent and substantial evidence on the whole record.

Judicial review of proceedings under Chapter 288 provides the findings of fact of the Commission shall be conclusive if supported by competent and substantial evidence, with review only as to questions of law. Section 288.210, RSMo 1986.

During the period from July 1, 1979 through March 31, 1985, Herron was a Missouri corporation selling Kirby vacuum cleaners in Cape Girardeau. The president of the appellant corporation, Marshall Herron, testified the business was a wholesaler for the Kirby Company. Retail sales to the public were generally accomplished

through dealers who purchased the vacuum cleaners from Herron for resale to consumers after home demonstrations. Variations on this general pattern occurred, for instance, instead of buying a machine for resale, a dealer could take a machine on consignment, and be allowed to return it if it went unsold. Also, Marshall Herron admitted he made some sales directly to consumers who came into the Herron office. The dealers were required to work under what was denominated the "Kirby Independent Dealer Agreement" (Agreement). The Agreement purported to establish a vendor/vendee relationship between the dealers and Herron, with the dealer as an independent contractor. Other significant provisions of the Agreement were the dealer's obligation to keep customer records and comply with directives regarding Kirby warranties, the dealer's acknowledgement that the use of Kirby's name and trademark were in the name of Herron, and the right of either party to cancel the agreement without notice. Upon termination of the Agreement, the dealer was prohibited from engaging in any activity indicating his affiliation with anyone authorized to sell or service Kirby products.

Other evidence pertinent to Herron's and the dealers' relationship and method of operation was developed at the hearing or was part of the record. The dealers were not guaranteed any income from sales. Their return on any sale was the difference between the price paid Herron and the sale price negotiated with the purchaser. State sales tax on the machines sold was collected and paid by Herron. The dealers were able to arrange installment sales of machines, and Herron would provide assistance in placing the contract with a financing company, or on rare occasions would itself take on the contract. Herron maintained an office in Cape Girardeau. The office served as the location the dealers picked up the machines and available sales aids. Optional training on sales and service occurred there. Telephone inquiries coming into the office were referred to the dealers. They were under no obligation to follow-up on such leads. Neither office space nor telephones were provided for the dealers.

After setting out certain factual findings, the decision of the appeals tribunal, which was adopted by the Commission, set out the following applicable sections of the Missouri Employment Security Law, Chapter 288, RSMo 1978 (as amended):

288.034.1. "Employment" means service, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied, and notwithstanding any other provisions of this section, service with respect to which a tax is required to be paid under any federal unemployment tax law imposing a tax against which credit may be taken for contributions required to be paid into a state unemployment fund or which, as a condition for full tax credit against the tax imposed by the Federal Unemployment Tax Act is required to be covered under this law.

288.034.5. Irrespective of the usual tests for determining the existence of the independent contractor relationship as at common law, service performed by an individual for wages shall be deemed to be employment subject to this law unless it is shown to the satisfaction of the division that:

(1) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and

(2) Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(3) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

288.036. "Wages" means all remuneration, payable or paid, for personal services including commissions and bonuses and, ... the cash value of all remuneration paid in any medium other than cash. Vacation pay and holiday pay shall be

considered as wages for the week with respect to which it is payable....:

Also pertinent to the resolution of this case is the legislature's call for a liberal interpretation of the Employment Security Law in order to accomplish its purpose: promoting employment security by increasing job opportunities through the public employment office system and by providing for the payment of unemployment compensation. *Beal v. Industrial Commission*, 535 S.W.2d 450, 458 (Mo.App.1975) (liberal construction of "employer" and "employment" is warranted to secure paramount and remedial purpose of relief); *see also*, Section 288.020.2.

Although the Commission found that the excess of the sales price over the price paid by a dealer to Herron was remuneration constituting wages, this court, in *Beal v. Industrial Commission*, 535 S.W.2d at 458, rejected the need for such a finding and instead focused on the three part test from Section 288.034.5 to determine the existence of an independent contractor. This particular section, "crucial to the ultimate issue here, sets out a three part test all part [sic] of which must be totally satisfied to establish a relationship of independent contractor as opposed to one of employment." *First Affiliated Securities, Inc. v. Labor and Industrial Relations Commission*, 738 S.W.2d 495, 496 (Mo.App. 1987). Applying this test to the evidence, it is clear that the Commission properly concluded the dealers were not independent contractors under Missouri law.

■ As to the first test, the Commission found "[t]he dealers were free from control over the performance of their service both under the contract and in fact." The second test, that the service be either outside the usual course of the business for which such service is performed or that the service be performed outside of all the places of business of the enterprise was not met. The evidence showed and the Commission found certain transactions that were an integral part of the services provided by the dealers occurred on Herron's premises. Included among these were the initial transfer of new machines, the transfer of

sales receipts, and the receipt of any machine taken in trade. Such activities were in the usual course of Herron's business. In addition, arrangements for financing were apparently done at Herron's office along with the optional training sessions. Since the terms of Section 288.034.5 require a satisfactory showing on all three tests, Herron's failure to meet the second test would end the matter. The third test, however, also was not met. The Commission concluded that Herron "failed to show by competent and substantial evidence that the dealers were customarily engaged in an independently established trade, occupation, profession or business." This court, in *Koontz Aviation v. Labor & Industrial Relations Commission*, 650 S.W.2d 331 (Mo.App.1983), examined this issue. Citing with approval cases from Vermont and Oregon, the court concluded the drivers being considered were dependent on another entity and could not have survived independent of that relationship. *Id.* at 334. Here, the dealers' opportunity to sell Kirby machines was totally dependent on their relationship with Herron. Because Herron's relationship with the dealers fails to satisfy two of the tests necessary to establish the existence of an independent contractor, Herron's dealers were employees within the meaning of Chapter 288, and Herron was subject to assessment for contributions under the Employment Security Law.

Herron's second point on appeal involves provisions of Section 288.034.12(16), RSMo 1986, enacted *after* the initial decision and appeal of this case but prior to the decision by the appeals referee. The section states:

12. The term "employment" shall not include:

(16) Services performed as a direct seller who is engaged in the trade or business of selling, or soliciting the sale of, consumer products in the home or otherwise than in, or affiliated with, a permanent, fixed retail establishment, if eighty percent of the remuneration, whether or not paid in cash, for the services performed rather than the number of hours worked is directly related to sales performed pursuant to a written contract between such direct seller and

the person for whom the services are performed, and such contract provides that the individual will not be treated as an employee with respect to such services for federal tax purposes.

Herron argues these new provisions exclude the dealers from employment and the Commission erred in failing to apply the law in effect at the time of its decision. The argument is not persuasive for two reasons.

First, the evidence showed that the dealers would not fall within the terms of the new statute. Marshall Herron testified he did have an office in Cape Girardeau and would make retail sales to customers coming into that office. Without undue repetition, the issue of affiliation must also be decided against Herron. The dealers contracted with Herron, their use of the Kirby trademark was in Herron's name, and certain transactions integral to the dealers' service, as outlined previously, occurred at the Herron office. The conclusion is the dealers were affiliated with a fixed retail establishment, and were thus not encompassed by the terms of Section 228.034.12(16).

Second, even if the statute was applicable, it would not apply to affect the tax liability Herron had already accrued. The first determination by the Division that the dealers performed services in employment was made in April, 1984, and Herron was assessed for a period starting July, 1979 through April of 1984. The decision was appealed, and the appeals referee's decision in affirmation was made in November, 1984. Between April and November, 1984 the legislature enacted Section 288.034.-12(16) with an effective date of August 13, 1984. Herron argues that the referee's findings as adopted by the Commission should have applied the amended statute to find an exclusion. The Court disagrees. Besides the fact that the evidence renders the exclusion inapplicable, this issue is controlled by *Hanks v. Labor & Industrial Relations Commission*, 639 S.W.2d 252 (Mo.App.1982). In *Hanks*, this court decided the appellant's argument that they should not be subject to the collection of unemployment contributions was based on an amendment to the Unemployment Compensation Law that left the commissioned real estate salesman at issue in the case uncovered by the law. *Id.* at 254. The court held, "[t]he amendment of the statute does not, as appellants would have it, wipe out appellants' liability for taxes already accrued." *Id.* Even if the exclusion had applied, liability for accrued taxes would exist for the period until the statute's amendment.

As the findings of the Commission were supported by competent and substantial evidence in the record, the judgment is affirmed.

All concur.