The PACESETTER CORPORATION,
Appellant,

v.

LABOR & INDUSTRIAL RELATIONS
COMMISSION, et al., Respondent.

No. WD 48877.

Missouri Court of Appeals,
Western District.

Aug. 9, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1994.

Ellen Cruickshank, St. Louis, for appellant.

Marily Gail Green, Jefferson City, for respondent.

Before HANNA, P.J., and
BRECKENRIDGE and ELLIS, JJ.

HANNA, Presiding Judge.

■ The Pacesetter Corporation (Pacesetter) appeals a decision by the Missouri Labor and Industrial Relations Commission (Commission) which determined that Steven Friedeck (claimant), formerly employed by Pacesetter, was entitled to wage credits for a prior period of employment. The issue on appeal is whether the services performed by claimant were those of a "direct seller" as defined in § 288.034.12(16), RSMo Supp.1993, and therefore not "employment."

The facts are undisputed. From April 3, 1989 through May 15, 1989, the claimant performed services for Pacesetter as a sales representative. His job was to sell siding to customers for residential homes. He worked pursuant to a contract with Pacesetter, which stated that he was paid on a commission basis only, and that he was not an employee of Pacesetter for federal and state income tax purposes.

At all relevant times, claimant was headquartered at Pacesetter's office in Earth City, Missouri. The Earth City office has a staff of three to four individuals to handle administrative duties, six to ten telemarketers, and ten to fifteen sales representatives. The normal procedure at that office is that the telemarketers make phone calls and arrange for visits by the sales representatives to potential customers. The sales representatives then travel to the customers' homes to sell the product. If a sale is made, the contract is drawn up and signed in the customer's home. The sales representative then returns the sales contract to the office administrators. Individuals at the Earth City office contact the siding supplier in St. Louis and order the materials needed for each specific job. The siding is delivered to and temporarily stored at the Earth City warehouse. The office administrators next contact one of approximately six installers employed by Pacesetter throughout the state to retrieve the siding from the warehouse and install it at the customer's home.

On December 5, 1990, the Division of Employment Security (Division) entered a determination of wage credits for claimant in the amount of $795 per quarter for the quarters ending March 31, 1989, and June 30, 1989. Pacesetter appealed this determination. On June 12, 1990, a telephonic hearing was held before an appeals referee. The referee found that claimant was a direct seller under § 288.034.12(16), RSMo Supp.1993, and that the services he performed for Pacesetter were not "employment."

The Division filed an appeal before the Commission and, nearly three years after the appeal was filed, it reversed the referee's decision, finding that the claimant's services were not exempt. Pacesetter appealed the Commission's decision to the Circuit Court of Cole County, Missouri, which affirmed that decision. Pacesetter now appeals to this court.

On appeal, we review the decision of the Commission rather than the judgment of the circuit court. *Labor & Indus. Relations Comm'n v. Division of Employment Sec.*, 856 S.W.2d 376, 378 (Mo.App.1993). When the Commission's factual findings are supported by competent evidence in the record, we will only determine whether application of the applicable statute to the undisputed facts was erroneous as a matter of law. *Id.* The Commission's interpretation of unemployment compensation statutes is entitled to great weight. *Garden View Care Ctr., Inc. v. Labor & Indus. Relations Comm'n*, 848 S.W.2d 603, 606 (Mo.App.1993).

■ The statute at issue in this case is § 288.034.12(16), RSMo Supp.1993, which states that the term "employment" shall not include:

(16) Services performed as a direct seller who is engaged in the trade or business of selling, or soliciting the sale of, consumer products in the home or otherwise than in, or affiliated with, a permanent, fixed retail establishment, if eighty percent or more of the remuneration, whether or not paid in cash, for the services performed rather than the number of hours worked is directly related to sales performed pursuant to a written contract between such direct seller and the person for whom the services are performed, and such contract provides that the individual will not be treated as an employee with respect to such services for federal tax purposes;

It is undisputed that the claimant was paid entirely on a commission basis pursuant to a written contract which contained the requisite language. Pacesetter challenges the Commission's findings that (1) siding is not a "consumer product"; and (2) the services performed by the claimant were "in, or affiliated with, a permanent, fixed retail establishment".

First, Pacesetter challenges the Commission's decision that siding is not a consumer product under § 288.034.12(16). Noting that the Missouri Employment Security Act does not include a definition of "consumer product," the Commission chose to use the definition contained in the Federal Anti–Tampering Act, 18 U.S.C. § 1365(g)(1)(B) (Supp. 1994), which states that a consumer product is:

(B) any article, product, or commodity which is customarily produced or distributed for consumption by individuals, or use by individuals for purposes of personal care or in the performance of services ordinarily rendered within the household, and which is designed to be consumed or expended in the course of such consumption or use;

The Federal Anti–Tampering Act is a statute designed to prevent tampering with food, drugs and cosmetics. The Commission held that siding is not designed to be consumed or expended in the course of its use, but rather, becomes a part of the real estate and is a fixture.

The question which must be answered is whether siding is appropriately considered a "consumer product," giving a plain and natural meaning to that phrase. There are no Missouri cases which define "consumer product" as that term is used in the Employment Security Act. Therefore, it is appropriate to look to the construction given the term by foreign jurisdictions that have interpreted their employment security acts. *See Agri–Foods, Inc. v. Industrial Comm'n*, 511 S.W.2d 898, 903 (Mo.App.1974). In *Agri–*

*Foods,* in order to determine whether certain farming operations fit within the "agricultural labor" exemption of the Employment Security Act, this court held:

> In this determination we are without benefit of any Missouri decisions, so we look to the constructions accorded by foreign jurisdictions to their employment security acts. Although not conclusive, these constructions are persuasive because the employment security enactments of the several states form an integral part of the national plan for social security and represent a cooperative effort by the states and the national government to carry out a common purpose for the general welfare.

*Id. (citing Mid–Continent Aerial Sprayers v. Industrial Comm'n,* 420 S.W.2d 354, 358 (Mo.App.1967); *Pioneer Potato Co. v. Division of Employment Sec.,* 17 N.J. 543, 111 A.2d 888, 889 (1955)).

■ Pacesetter argues that the Commission erred in adopting this definition of "consumer product," and urges this court to adopt a broader definition, specifically the definition contained in the proposed regulations to § 3508 of the Internal Revenue Code, 26 U.S.C. § 3508 (1986). Regulation 31.3508–1(g)(3) states in relevant part:

> The term "consumer product" means any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed).

Treatment of Qualified Real Estate Agents and Direct Sellers as Nonemployees, 51 Fed. Reg. 619, 624 (proposed Jan. 7, 1986) (proposed as 26 C.F.R. § 31.3508–1(g)(3)). Of course, interpretations of similar federal laws are not binding on Missouri courts. *Beal v. Industrial Comm'n,* 535 S.W.2d 450, 461 (Mo.App.1975). However, the federal statute to which the above regulation pertains is the federal equivalent of § 288.034.12(16), the direct seller exemption.

The Commission replies that if this court adopts a very broad definition of "consumer products," too many individuals would fall under the direct seller exemption and, there-

fore, not be covered by the Employment Security Act. This, the Commission continues, would be contrary to the stated objective of the Act contained in § 288.020.2, RSMo 1986.

In reviewing the Commission's interpretation of terms in the statute, our duty is to determine the legislature's intent by applying the plain and natural meaning of the words to the statutory language to promote the object of the act. *Crawford v. Industrial Comm'n,* 482 S.W.2d 739, 741 (Mo.App.1972). One general purpose of the Employment Security Act is to provide for unemployment reserves to be used for the benefit of persons unemployed through no fault of their own, and the law should be liberally construed to accomplish that purpose. § 288.020.2, RSMo 1986; *JMH Constr. Mgt., Inc. v. Labor & Indus. Relations Comm'n,* 810 S.W.2d 521, 524 (Mo.App.1991). The federal statute has the identical objective of our Act. *See Personal Fin. Co. v. United States,* 86 F.Supp. 779, 786 (D.Del.1949).

We find the proposed I.R.S. regulation defining the term "consumer product" to be persuasive. The definition given in the regulation coincides with the plain and natural meaning of the term. *See, e.g., Roosevelt Fed. Sav. & Loan Ass'n v. Crider,* 722 S.W.2d 325, 329–30 (Mo.App.1986) (holding that siding is a "consumer good" as defined by the Missouri Consumer Obligations Act and the Uniform Commercial Code). We therefore hold that the term "consumer products" as it is used in § 288.034.12(16) includes any tangible personal property intended to be attached or installed on any real property without regard to whether it is so attached or installed. The siding which claimant sold fits within the category of consumer products.

■ In its second point, Pacesetter challenges the Commission's finding that "claimant's services as a sales representative for Pacesetter are affiliated with a permanent, fixed retail establishment."

The Commission cites *Herron Enter., Inc. v. Labor & Indus. Relations Comm'n,* 765 S.W.2d 614 (Mo.App.1988), to support their proposition that the services performed by

the claimant were affiliated with Pacesetter. However, the Commission assumes that Pacesetter is in fact a fixed, permanent retail establishment. The proposed regulations to 26 U.S.C. § 3508 also contain a definition of "permanent retail establishment." Regulation 31.3508–1(g)(4) states in relevant part:

A permanent retail establishment is any retail business operating in a structure or facility that remains stationary for a substantial period of time to which consumers go to purchase consumer goods. Examples of these establishments are: grocery stores, hardware stores, clothing stores, hotels, restaurants, drug stores, and newsstands.

Pacesetter's Earth City office does not fit within that definition. Further, in *Herron*, this court held that the employer in that instance was a retail establishment because it had an office in Cape Girardeau and it made some retail sales to customers who would come to the office. *Herron*, 765 S.W.2d at 618. In the case before us, the evidence showed that there were never any retail sales made from the office. Instead, all contracts for sales took place in the customers' homes. Pacesetter is not a "fixed, permanent retail establishment" as that term is used in § 288.-034.12(16). Therefore, the services performed by claimant could not have been affiliated with a fixed, permanent retail establishment so as to remove him from the direct seller exemption.

We hold that the services performed by the claimant were those of a direct seller. Pursuant to § 288.034.12(16), therefore, these services are not considered "employment" under the Employment Security Act, and claimant is not entitled to wage credits for the period of time during which he was employed by Pacesetter as a sales representative.

Our decision renders moot Pacesetter's final point that the Commission's delay of nearly three years in deciding this case resulted in prejudice to Pacesetter and, therefore, the decision of the Commission should not be enforced.

The decision of the Commission is reversed and the case remanded for entry of a judgment in accordance with this Opinion.

All concur.